NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0198n.06

No. 10-5498

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Feb 22, 2013**
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| STEVE BLACK, | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellant, | ) | COURT FOR THE WESTERN |
|  | ) | DISTRICT OF KENTUCKY |
| v. | ) |  |
|  | ) |  |
| DIXIE CONSUMER PRODUCTS LLC; | ) |  |
| GEORGIA-PACIFIC CONSUMER PRODUCT | ) |  |
| HOLDINGS LLC, | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |

Before: ROGERS, COOK, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Appellant Steve Black ("Black") appeals the district court's grant of summary judgment in favor of Dixie Consumer Products (Dixie) and Georgia-Pacific Consumer Product Holdings (Georgia-Pacific). We **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

**I.**

On July 11, 2008, Black sustained an injury while working on the premises of a Dixie plant in Bowling Green, Kentucky. Black was a truck driver for Western Express, Inc. (Western), a commercial carrier that had contracted for shipping services with Georgia-Pacific, Dixie's parent corporation, to provide transportation services for Georgia-Pacific and its subsidiaries. Black's work included only the transportation of materials; loading and unloading the materials off the trucks was

not one of his job duties. On the day of the injury, Black was transporting a shipment of rolled raw paper material from another Georgia-Pacific subsidiary to Dixie, where it would be used to produce paper plates. While Black was on the loading dock, a Dixie employee operating a fork lift/tow motor ran over Black's left foot, ultimately resulting in a below-the-knee amputation of his leg.

Following the injury, Black successfully pursued a workers' compensation claim against Western. Subsequently, in October of 2008, Black filed a tort lawsuit against Dixie and Georgia-Pacific. Dixie and Georgia-Pacific denied liability for Black's injuries, and, in the alternative, asserted as a complete affirmative defense the exclusive remedy sections of the Kentucky Workers' Compensation Act (KWCA). Under the KWCA, "a person who contracts with another . . . to have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person" is a "contractor" immune from liability for the injuries incurred by a contracted employee while preforming work-related duties, if the employee is otherwise able to secure workers' compensation benefits from their direct employer. KRS § 342.610(2). Dixie and Georgia-Pacific argue that they are "contractors" within the provisions and definitions of the Act and therefore immune from tort liability with respect to Black's work-related injuries.

After minimal discovery, the parties filed cross-motions for summary judgment on this issue. In its motion for summary judgment, Dixie and Georgia-Pacific argued that they were contractors of Black under the KWCA because shipping services were essential to Dixie's business and Dixie regularly received shipments such as the one Black transported on the day of his injury. Dixie and

Georgia-Pacific claimed that, as contractors, they were immune from tort liability because Black had already received workers' compensation from his direct employer, Western.

In his motion for partial summary judgment, Black argued that the classification of Dixie as an "employer" for the purposes of the KWCA is preempted by the Federal Motor Carrier Safety Act ("FMCSA"), which defines "employer" as "a person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns an employee to operate it." 49 U.S.C. § 31132(3)(A). Further, Black argued that because Dixie cannot show that shipping or transportation of goods was part of the "work" that Dixie itself performs, it is not a "contractor" under the KWCA. Lastly, Black contended Dixie was not a contractor because it was not a party to the agreement between Western and Georgia-Pacific.

The district court agreed with Dixie and Georgia-Pacific. Specifically, the court held that there was no conflict between the FCMSA and KWCA, such that the FCMSA would preempt a finding that Georgia-Pacific and Dixie were immune from tort liability as "employers" under the KWCA. The court also determined that the carriage agreement between Western and Georgia-Pacific qualified Georgia-Pacific as a "contractor" under the KWCA. With respect to Dixie, the court stated that the definition of "contractor" under the KWCA does not require a formal written contract or a typical contractor/subcontractor relationship between the parties and the fact that Dixie "functioned as a contractor as a practical matter" was sufficient. Finally, the court noted that Kentucky courts "have routinely found that transportation and distribution of materials is a 'regular and recurrent' part of business operations." PID# 261. On that basis, the court found that transportation of raw paper materials to Dixie is a regular and recurrent part of Dixie's business

operations and Black's complaint is therefore barred by the exclusive remedy of the KWCA. Black

appeals.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Spears v. Ruth*,

589 F.3d 249, 253 (6th Cir. 2009). Summary judgment is appropriate where, in light of the entire

record, there is no genuine issue as to any material fact and the moving party is entitled to judgment

as a matter of law. *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005). We are required

to "view all the facts and the inferences drawn therefrom in the light most favorable to the

nonmoving party." *Id.* (citations and internal quotations omitted).

A federal court sitting in diversity must apply the substantive law of the state in which it is

situated. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 73 (1938). Here, the tort claims asserted by Black

are analyzed under Kentucky law. Under Kentucky law, the question whether Dixie is a statutory

employer is a mixed question of law and fact that must be ascertained by the court, rather than by

a jury. *See General Elec. Co. v. Cain*, 236 S.W.3d 579, 589 (Ky. 2007).

## III. ANALYSIS

### A. Exclusive Remedy Provision of the KWCA

We first address whether Georgia-Pacific and Dixie are contractors under the KWCA.

Section 342.690(1) of the KWCA provides:

If an employer secures payment of compensation as required by this chapter, the
liability of such employer under this chapter shall be *exclusive and in place of all
other liability of such employer to the employee . . .* on account of such injury or
death. For purposes of this section, the term "employer" shall include a "contractor"

> covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.

KRS § 342.690 (emphasis added).  KRS § 342.610(2) provides in relevant part that "a person who contracts with another . . . [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person . . . shall for the purposes of this section be deemed a contractor, and such other person a subcontractor."  If Georgia-Pacific and Dixie are "contractors" under § 342.610(2), they are immune from tort liability because Black was able to secure workers' compensation benefits from Western.

As the parties pleading the exclusive remedy affirmative defense, Georgia-Pacific and Dixie bear the burden of proof.  *General Elec. Co.*, 236 S.W.3d at 585, 590.  Because Georgia-Pacific and Dixie have separate and distinct legal rights with respect to Black, we will consider each appellee's affirmative defense under the statute separately.

### 1. Dixie as "contractor" under the KWCA

Black first argues that there was no contractor/subcontractor relationship established between Dixie and Western under the carriage agreement.  Rather, Black argues that the agreement established an arms-length contractual relationship between Georgia-Pacific and Western, and Dixie, as a wholly independent subsidiary of Georgia-Pacific, is not a party to the contract and thus is not a "contractor" under § 342.610(2).

As noted by the district court, the issue whether a formal contract is required to establish the contractor relationship was considered by the Kentucky Supreme Court in *Beaver v. Oakley*, 279 S.W.3d 527 (Ky. 2009).  In *Beaver*, the court squarely held that § 342.610 "does not demand

evidence of formal written contracts between a defendant and the plaintiff's direct employer for the defendant to have up-the-ladder immunity but, rather, shows that contracts might be found in this context when the facts show that the defendant is effectively functioning as the contractor." *Id.* at 534. Thus, under Kentucky law, the absence of a formal written contract between the parties is not dispositive.

Black further argues that because the carriage agreement between Western and Geogia-Pacific refers to Western as an "independent contractor,"[1] and any rights held by Dixie under the contract can be no greater than the rights of the contracting party, Georgia-Pacific, Dixie and Western cannot fall within the contractor/subcontractor relationship under § 342.610. However, the Kentucky Supreme Court has held that the relevant inquiry under the KWCA is not whether the injured worker is an employee or independent contractor, but rather whether "the task the independent contractor is hired to perform" is a "regular or recurrent part of the work of the trade, business, occupation, or profession" of the premises owner. *Cain*, 236 S.W.3d at 588. Therefore, any express contractual provision describing Western as an "independent contractor" has no bearing on whether Dixie and Georgia-Pacific are contractors within the meaning of § 342.610(2).

Turning to the substantive consideration whether Dixie is a "contractor" under the KWCA, we note at the outset that Black does not substantially challenge the district court's conclusion that deliveries of raw paper materials to Dixie occurred on a regular or recurrent basis. Considering the

---

[1] The Contract Carriage Agreement states, "[i]t is expressly understood and agreed that the business of [Western], its agents, servants and employees, is in all respects separate and distinct from [Georgia-Pacific], and that [Western], and its agents, servants and employees, are with respect to [Georgia-Pacific], independent contractors." PID# 112.

record evidence that Dixie received as many as fifty truck shipments of rolled paper raw materials

during a typical week, there appears to be no material question on this issue. Instead, Black

primarily argues that Dixie fails to show that Western was performing *work* that was a regular or

recurring part of the *work* of Dixie's "trade, business, occupation, or profession."

In support, Black relies on the Kentucky Supreme Court's holding in *Cain* that "work" under

§ 342.610 is that which a "business or similar businesses would normally perform or be expected

to perform with employees." *Cain*, 236 S.W.3d at 588. Black claims that because Dixie concedes

that it engages none of its own employees in the commercial transportation of raw materials to its

production facility, Western's shipment of such materials is not a "part of the work" of Dixie's

business. Further, Black argues that the transportation of raw paper supplies from a third party mill

to Dixie's production facility is not a part of the "work" of Dixie's business, which involves the

production of finished paper goods.

In *Cain*, the Kentucky Supreme Court considered whether employees who were injured while

performing work for their direct employers on premises owned by the various businesses named as

defendants were precluded from pursuing tort actions against those defendants by the exclusive

remedy provision of § 342.610. Panels of the Kentucky Court of Appeals had reached different

results in cases involving various circumstances, holding some defendants to be contractors and

denying others that status. The Kentucky Supreme Court reversed with respect to several of the

defendants who had been determined to be contractors, concluding that although the employees

performed work for the defendants at regular or recurrent intervals, the employees did not perform

work that was of the kind performed by the defendants or other similar businesses in the defendants'

industry. The Kentucky Supreme Court explained:

> Work of a kind that is a "regular or recurrent part of the work of the trade, business,
> occupation, or profession" of an owner does not mean work that is beneficial or
> incidental to the owner's business or that is necessary to enable the owner to continue
> in business, improve or expand its business, or remain or become more competitive
> in the market . . . It is work that is customary, usual, or normal to the particular
> business (including work assumed by contract or required by law) or work that the
> business repeats with some degree of regularity, *and it is of a kind that the business
> or similar businesses would normally perform or be expected to perform with
> employees.*
> . . . .
> The test is relative, not absolute. Factors relevant to the "work of the . . . business,"
> include its nature, size, and scope as well as whether it is equipped with the skilled
> manpower and tools to handle the task the independent contractor is hired to perform.

*Cain*, 236 S.W.3d at 588 (emphasis added).

Prior to *Cain*, the Kentucky Supreme Court held in *Fireman's Fund Ins. Co. v. Sherman &

Fletcher* that "[e]ven though [a contractor] may never perform that particular job with his own

employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his

trade or occupation." 705 S.W.2d 459, 462 (Ky. 1986).

Under *Fireman's Fund Ins. Co.* and *Cain*, whether the work performed by the contracted

employee at the time of his or her injury is normally performed by the contractor's regular employees

is not dispositive. Rather, that is simply one factor to consider in the "regular or recurrent" analysis.

Other relevant factors include the "nature, size, and scope" of the business, whether the business is

equipped with the tools and manpower to perform the contracted-for work, and whether "similar

businesses would normally expect or be expected to handle such projects with employees." *Cain*,

236 S.W.3d at 588.

In the present case, the district court did not analyze the *Cain* factors before concluding that the work Black performed at the time of his injury was a regular or recurrent part of Dixie's business. Instead, the district court found that the frequency and volume of raw paper shipments received by Dixie demonstrated that such deliveries were "integral to the work[] performed at the Dixie plant." Yet, the Kentucky Supreme Court explained in *Cain* that "work" under the KWCA does not mean "work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business." 236 S.W.3d at 588. Thus, even though Dixie needed raw paper materials to be transported and delivered in order to perform its work, that is not a sufficient basis to find that such deliveries were a "part of" Dixie's work. Under *Cain*, in order to find that the transportation of raw paper materials between a supplier and Dixie is a "part of" Dixie's work, Dixie must demonstrate both that this type of transportation is a "customary, usual, or normal" part of Dixie's business or "work that [Dixie] repeats with some degree of regularity" **and** that it is work that Dixie or similar businesses would normally perform or be expected to perform with employees. Regardless whether Dixie has satisfied the first prong of the *Cain* standard, it has not produced any evidence to show that it meets the second prong. The record demonstrates that Dixie owned no commercial vehicles and employed no drivers for the purpose of interstate transport of raw materials. And there is no evidence demonstrating that businesses in the similar "trade, business, occupation or profession" as Dixie normally use their own employees to transport raw materials from their suppliers to their facilities.[2] Because Dixie has not established that the work Black performed at the

---

[2]The record is also unclear about whether Dixie or Georgia-Pacific was responsible for arranging the transportation of raw materials to Dixie's Bowling Green Plant.

time of his injury was a "regular or recurrent" part of its work, it was not entitled to judgment as a matter of law.[3]

### 2. Georgia-Pacific as "contractor" under the KWCA

In considering whether Georgia-Pacific is a statutory employer under § 342.610(2), this court must walk though the same analysis. At the outset, for the reasons previously noted, we reject Black's argument that Georgia-Pacific and Western's negotiated relationship as "independent agents" should bar Georgia-Pacific's claim that it is a contractor under the KWCA.

At the time of Black's accident, Georgia-Pacific had an active contract with Western to provide shipping services for Dixie and its subsidiaries. The district court cited language in the carriage agreement that Georgia-Pacific, "in the usual and ordinary conduct of its business requires transportation by motor carriers of its products, materials, and equipment," PID# 108, to find that the hauling of raw paper product pursuant to that agreement is a "regular or recurrent part of Georgia-Pacific's business." PID# 262.

This contractual language is not dispositive. Rather, we must consider whether the work performed by Black, on behalf of Western, is "part of the work of the trade, business, occupation, or profession" of Georgia-Pacific. There is little evidence in the record concerning Georgia-Pacific's

---

[3]In support of its conclusion that Dixie is a contractor under the KWCA, the district court also cited other district court cases, as well as a case from the Kentucky Court of Appeals, which stand for the proposition that "transportation . . . of materials are a regular or recurrent part of business operations." However, with one exception, all of the cases cited by the district court pre-date *Cain*. The sole post-*Cain* case cited by the district court, *Dean v. Dow Corning Corp.*, 2009 WL 995469 (E.D. Ky. April 4, 2009), does not mention *Cain* or consider any of the relevant factors discussed in *Cain* in its analysis. Accordingly, we do not find the reasoning of this case persuasive.

primary business function, the degree of control Georgia-Pacific assumed in ordering shipments of raw paper supplies for Dixie, or whether Georgia-Pacific's own employees were regularly or recurrently engaged in the work of transporting raw materials from the paper mill or other production facilities to Dixie or other Georgia-Pacific subsidiaries. Although Western regularly transported materials between Georgia-Pacific subsidiaries, and from third parties to various subsidiaries, there is no evidence in the record that indicates whether transportation of raw materials between a parent and its subsidiary, or between subsidiaries, is the type of work that Georgia-Pacific or a similar business would be expected to perform with its own employees. Accordingly, Georgia-Pacific has not met its burden of demonstrating that it is a "contractor" under the KWCA.

### B. Preemption by the Motor Carrier Safety Act

Black also asserts that the provisions defining "employer" within the Federal Motor Carrier Safety Act (FMCSA) preempt the classification of Georgia-Pacific and Dixie as statutory employers under the KWCA.

The FMCSA states that the primary purpose of the legislation is:

> (1) to promote the safe operation of commercial motor vehicles; (2) to minimize dangers to the health of operators of commercial motor vehicles and other employees whose employment directly affects motor carrier safety; and (3) to ensure increased compliance with traffic laws and with the commercial motor vehicle safety and health regulations and standards prescribed and orders issued under this chapter.

49 U.S.C. § 31131(a). The statute provides, *inter alia*, that an "employer" is "a person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns an employee to operate it," 49 U.S.C. § 31132(3)(A), and

continues to enumerate various duties of employers with respect to the safety of motor vehicles and their operators.

When considering federal preemption of state law, this court must begin "with the traditional presumption . . . that Congress did not intend to displace state law . . . unless that was the clear and manifest purpose of Congress." *Interstate Towing Ass'n, Inc. v. City of Cincinnati*, 6 F.3d 1154, 1161 (6th Cir. 1993) (citations and internal quotations omitted). "In no field has [this] deference to state regulation been greater than that of highway safety regulation." *Id.* at 1162. Further, preemption of state authority occurs only in limited cases: (1) where Congress preempts state law in express terms; (2) when Congress creates a regulatory scheme "so pervasive as to make reasonable the inference that Congress left no room to supplement it"; or (3) where "state law is preempted to the extent that it actually conflicts with federal law." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983).

Here, the FMCSA did not expressly preempt the Kentucky workers' compensation statute, and Black does not allege any actual conflict between the federal and state laws. Rather, Black claims that the FMCSA is a "comprehensive scheme for the regulation of commercial motor vehicle safety," which was intended to "fully occupy the parameters of motor carrier employment."

However, Black's argument is without merit. First, there is no indication that Congress intended the FMCSA to preempt state workers' compensation statutes where the purposes of the two statutes are clearly distinct. The primary purpose of the KWCA is to ensure that workers' compensation benefits are available to injured employees and thus requires contractors to assume responsibility for the provision of workers' compensation benefits where the subcontractor has

otherwise failed to do so. In contrast, the FMCSA was enacted specifically to promote the safety of commercial motor vehicles and their operators and accordingly sets forth detailed safety and health standards *for those operators*. There is simply no indication that the FMCSA, a statute intended to promote commercial motor vehicle safety, should preempt state legislation regarding the provision of workers' compensation benefits.

Black further argues that Georgia-Pacific and Dixie should be required to comply with the FMCSA before they may be considered "employers" under the KWCA. However, there is no indication that a classification of Georgia-Pacific or Dixie as an "employer" under the FMCSA should have any bearing on its classification, if any, under the KWCA, or that Congress intended the FMCSA to define "employer" for the purposes of workers' compensation laws. The fact that Dixie and Georgia-Pacific can be classified as employers for the purpose of one statute, but not the other, is of no consequence.

**C. Choice of Law Provision**

Finally, Black argues that the district court erred in applying the exclusive remedy provision under Kentucky statutory law, because the contract carriage agreement clearly states, "[t]his agreement shall be interpreted in accordance with the laws of the state of Delaware, without giving effect to the conflict of law rules thereof." PID# 114. Black argues that the district court should have applied Delaware law to the question whether an employer/employee relationship existed between Black and Georgia-Pacific/Dixie, and that under Delaware law, which has no counterpart to § 342.610, Black would be able to pursue tort claims against Dixie and Georgia-Pacific.

Black's choice-of-law argument was raised for the first time in his Rule 59(e) motion to vacate the summary judgment order. It is well settled that Rule 59(e) motions are not appropriate to "raise arguments which could, and should, have been raised before judgment issued. Thus, the district court was not obliged to consider this argument and, because it did not, we have no ruling to review. Any further argument on this issue must take place on remand.

## IV.

For the foregoing reasons, we **REVERSE** and **REMAND** for proceedings consistent with this opinion.