RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

STEVE BLACK,

　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

DIXIE CONSUMER PRODUCTS LLC; GEORGIA-PACIFIC CONSUMER PRODUCTS HOLDINGS LLC,

　　　　　　　　*Defendants-Appellants.*

No. 15-5889

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 1:08-cv-00142—Joseph H. McKinley, Jr., Chief District Judge.

Argued: August 5, 2016

Decided and Filed: August 29, 2016

Before: BOGGS, CLAY, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Matthew P. Cook, COLE & MOORE, P.S.C., Bowling Green, Kentucky, for Appellants. Mike Breen, MIKE BREEN ATTORNEY AT LAW, P.S.C., Bowling Green, Kentucky, for Appellee. **ON BRIEF:** Matthew P. Cook, John David Cole, Sr., COLE & MOORE, P.S.C., Bowling Green, Kentucky, for Appellants. Mike Breen, MIKE BREEN ATTORNEY AT LAW, P.S.C., Bowling Green, Kentucky, for Appellee.

　　SUTTON, J., delivered the opinion of the court in which BOGGS, J., joined. CLAY, J. (pp. 11–20), delivered a separate dissenting opinion.

1

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.  Steve Black, a truck driver for Western Express, drove a load of raw paper materials to a factory operated by Dixie Consumer Products in Bowling Green, Kentucky.  During the unloading process, a careless Dixie employee ran over Black's foot with a forklift.  Black received workers' compensation from Western due to the injury.  He then filed a tort claim against Dixie and its parent company, Georgia-Pacific.  The district court denied Dixie and Georgia-Pacific's motion for summary judgment.  Because Kentucky's workers' compensation statutes provide an exclusive remedy for injuries of this sort, we reverse the decision of the district court.

I.

Dixie makes paper cups and plates out of raw paper material.  Forty-eight different truck and freight service providers carry the raw paper to the Bowling Green factory.  One of them is Western, which agreed to "transport and deliver shipments of contract freight from facilities or other designated locations to the various destination points."  R. 14-2 at 2.

On the day of the accident, Black drove a Western truck, loaded with 41,214 pounds of pulpboard, to the factory.  Ten-pound rubber mats separated the heavy paper rolls and secured the load on its journey to Bowling Green.  After parking his truck, Black received permission from Larry Chinn, the Dixie forklift operator, to enter the loading dock through a locked cage designed to keep pedestrians off the loading dock.  It was "[c]ommon practice," as Black understood, for the truck driver to unload the rubber mats so that the Dixie forklift operator did not "have to get off each time and get" them himself.  R. 84-12 at 7, 12.

Chinn and Black soon got "into a rhythm" in unloading the materials.  R. 84-9 at 22.  Chinn would remove a layer of paper rolls with his forklift.  And Black would remove the rubber mats and walk them to the trash compactor.  At some unfortunate point, they fell out of rhythm, and Chinn ran over Black's foot with the forklift, leading to a below-the-knee amputation of Black's leg.

Black received workers' compensation from Western due to the injury.

He then filed this tort action against Dixie and Georgia-Pacific, seeking $1,850,000 in damages.

Dixie and Georgia-Pacific answered that the exclusive nature of the Kentucky Workers' Compensation Act barred Black's claims. *See* Ky. Rev. Stat. §§ 342.610(2), .690. "After minimal discovery," the district court agreed. *Black v. Dixie Consumer Prods. LLC*, 516 F. App'x 412, 413 (6th Cir. 2013). The district court rejected Black's claim as a matter of law due to the exclusive nature of the Kentucky law, granting summary judgment to Dixie and Georgia-Pacific.

Our court reversed because the record was insufficiently developed. In particular, the evidence did not show whether "the work Black performed at the time of his injury was a regular or recurrent part of [Dixie's] work." *Black*, 516 F. App'x at 417. "[I]n order to find that the transportation of raw paper materials between a supplier and Dixie is a 'part of' Dixie's work," a precondition for contractor immunity under Kentucky law, "Dixie must demonstrate both that this type of transportation is a 'customary, usual, or normal' part of Dixie's business or 'work that [Dixie] repeats with some degree of regularity' ***and*** that it is work that Dixie or similar businesses would normally perform or be expected to perform with employees." *Id.* (quoting *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 588 (Ky. 2007)).

On remand, the parties introduced additional evidence about the nature of this transport service. As the district court saw this evidence, it did not show that Dixie and Georgia-Pacific were entitled to immunity from this lawsuit and thus it denied their motion for summary judgment.

## II.

Denials of summary judgment are not final orders. And we have jurisdiction only over "final decisions of the district courts." 28 U.S.C. § 1291. But there are a few exceptions, a few times when the courts of appeals will review non-final orders on an interlocutory basis. The key exception is the collateral-order doctrine. Under it, a party may appeal a non-final order only "if

it (1) conclusively determines the disputed question; (2) resolves an important issue separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 105 (2009) (quotation omitted); *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949).

The Supreme Court has frequently applied the collateral-order doctrine in the context of decisions rejecting immunity-from-suit defenses. The best known, and most frequently invoked, immunity-from-suit cases involve claims of sovereign immunity, absolute immunity, and qualified immunity raised by governmental entities and individuals. In all three settings, the losing party may appeal the rejection of an immunity defense immediately because the core point of "immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (qualified immunity); *see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) (state sovereign immunity); *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (absolute immunity).

Not all invocations of the word "immunity," however, satisfy this exception. What matters is the "nature of the protection," as opposed to "the loose ability of an attorney to use the term 'immunity.'" *Kelly v. Great Seneca Fin. Corp.*, 447 F.3d 944, 950 (6th Cir. 2006). And what counts in terms of protection is whether the relevant state or federal law "provides immunity from suit rather than immunity from liability." *Sabo v. City of Mentor*, 657 F.3d 332, 336 (6th Cir. 2011); *see Range v. Douglas*, 763 F.3d 573, 581 (6th Cir. 2014); *Chesher v. Neyer*, 477 F.3d 784, 793 (6th Cir. 2007).

Under Kentucky law, a contractor has immunity from negligence actions (in return for providing backup workers' compensation coverage) when "the worker was injured while performing work that was of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of the owner," no matter whether "the immediate employer actually provided workers' compensation coverage." *Cain*, 236 S.W.3d at 585. Often called "up-the-ladder" contractor immunity, it establishes an immunity from suit, not just from liability. Black concedes as much. *See* Appellee's Br. 5, 20. Dixie and Georgia-Pacific agree. *See* Appellant's Br. 36, 44–45. Kentucky courts agree, too. The Supreme Court of Kentucky describes up-the-ladder immunity as "a contractor's immunity from tort lawsuits." *Beaver v.*

*Oakley*, 279 S.W.3d 527, 528 n.1 (Ky. 2009); *see Dilts v. United Grp. Servs.*, LLC, 500 F. App'x 440, 449–50 (6th Cir. 2012) (Clay, J.) (quoting the *Beaver* footnote).  The immunity plays a pivotal role in maintaining the tradeoffs contained in Kentucky's workers' compensation scheme.  *See Cain*, 236 S.W.3d at 587.  Consistent with the reality that up-the-ladder immunity insulates contractors from lawsuits, not just liability, and consistent with the give-and-take nature of all workers' compensation systems, Kentucky courts themselves allow immediate appeals from an interlocutory order denying a private contractor's immunity.  *Ervin Cable Constr., LLC v. Lay*, 461 S.W.3d 422, 423 (Ky. Ct. App. 2015).

Kentucky courts, it is true, at times refer to contractor immunity as "immunity from liability," *Beaver*, 279 S.W.3d at 528, as our colleague points out in dissent.  But this is unsurprising given that an immunity from suit includes an immunity from liability.  What matters is that Kentucky treats the immunity as an "absolute immunity, the denial of which is subject to immediate appeal since immunity is designed to free the possessor not only from liability, but also from the costs of defending an action."  *Ervin Cable Constr.*, 461 S.W.3d at 423.  We ourselves use both "immunity from suit[]" and "immun[ity] from liability" to describe immunities of such magnitude, sometimes in back-to-back sentences.  *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).  That is because absolute immunity "refers to protection from suit and not simply the assessment of liability."  *Bush v. Rauch*, 38 F.3d 842, 849 (6th Cir. 1994).  Even aside from what Kentucky *calls* the immunity, it *treats* the immunity as one from suit by permitting interlocutory appeals from the denial of contractor immunity.  An employer's immunity from suit is the flip side of the employee's freedom—immunity if you will—from having to file a suit to obtain coverage in the first place.  A major concern of workers' compensation systems is "that benefits be paid to deserving claimants as soon as possible" and without having to file a lawsuit.  *Edwards v. Dir., Office of Workers' Comp. Programs*, 932 F.2d 1325, 1327–28 (9th Cir. 1991) (per curiam) (granting collateral appeal of order staying award of benefits).  A workers' compensation system works best when there is no litigation on the front end or the back end.  Because the Kentucky Supreme Court aptly treats this regime as "a contractor's immunity from tort lawsuits," *Beaver*, 279 S.W.3d at 528 n.1, Dixie and Georgia-Pacific may appeal.

True, Dixie and Georgia-Pacific are private companies. True also, the collateral-order exception "typically involves claims of immunity from suit by government officials," as Black points out. Appellee's Br. 3. But that does not make public-official claims of immunity the only ones available under the exception. We have frequently allowed such appeals by private parties for the same reason we permit interlocutory appeals by governmental actors: They are entitled to immunity from suit, whether under state or federal law. *See,* e.g., *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 472 (6th Cir. 2014) (denial of qualified immunity for "private non-profit corporation"); *Brotherton v. Cleveland*, 173 F.3d 552, 559–60 (6th Cir. 1999) (same). In point of fact, the decision that gave birth to the collateral-order exception arose from a private corporation's interlocutory appeal. *Cohen*, 337 U.S. 546–47 (permitting an appeal from an order denying a motion for security). The shortage of cases allowing interlocutory appeals from denials of contractor immunity stems not from the inapplicability of the collateral-order doctrine, but from the fact that the Kentucky workers' compensation system is the exclusive remedy for workplace injuries when the worker, as here with Black, receives compensation. *See* Ky. Rev. Stat. § 342.690.

Other courts of appeals have applied the exception to private defendants as well. The Ninth Circuit, for example, exercised jurisdiction over an appeal by companies and individuals claiming intellectual property rights to Superman when the district court denied "a motion to strike pursuant to California's anti-SLAPP statute"—a law that "stop[s] [] lawsuits early in the litigation process" when they are "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013, 1015 (9th Cir. 2013) (quotation omitted). "California's anti-SLAPP statute," the court reasoned, "functions as an immunity from suit, and not merely as a defense against liability." *Id.* Because "an immunity from suit is 'imbued with a significant public interest' that is not always present with regard to a defense against liability," the Ninth Circuit ruled that "the denial of an immunity from suit—whether created by state or federal law—is an immediately appealable collateral order." *Id.* (quotation omitted). Other courts of appeals have followed a similar path. *See, e.g.*, *Godin v. Schencks*, 629 F.3d 79, 84–85 (1st Cir. 2010) (allowing interlocutory appeal for denial of anti-SLAPP motion under Maine law); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 143 (2d Cir. 2013) (same under

California's anti-SLAPP statute); *NCDR, L.L.C. v. Mause & Bagby, P.L.L.C.*, 745 F.3d 742, 752 (5th Cir. 2014) (same for Texas's anti-SLAPP statute); *see also McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1339–40 (11th Cir. 2007) (permitting appeal by military contractor due to "substantial claim to a true immunity from suit").

We have jurisdiction to review this interlocutory order.

III.

The parties share common ground about most of the legal parameters concerning this appeal. They agree we give fresh review of the district court's order denying statutory immunity, as with its order denying summary judgment. *Cain*, 236 S.W.3d at 589. They agree that, if Dixie is immune from suit, so is Dixie's owner, Georgia-Pacific. And they do not challenge the basic contours of contractor immunity under Kentucky law.

"If Georgia-Pacific and Dixie are 'contractors' under § 342.610(2)," as we previously explained, "they are immune from tort liability because Black was able to secure workers' compensation benefits from Western." *Black*, 516 F. App'x at 414. "The purpose of KRS 342.610(2)(b)," the Supreme Court of Kentucky has added, "is not to shield owners or contractors from potential tort liability but to assure that contractors and subcontractors provide workers' compensation coverage." *Cain*, 236 S.W.3d at 587. An injured employee's "immediate employer[]" ordinarily provides workers' compensation benefits in exchange for which it gets immunity from tort lawsuits. *Id.* at 585. When the immediate employer fails to provide workers' compensation, the contractor, "like any other employer[]," is on the hook for workers' compensation but gains statutory immunity if "the worker was injured while performing work that was 'of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession.'" *Id.* (quotation omitted).

All of this leaves us with a three-part inquiry to determine immunity from suit under the Kentucky Workers' Compensation Act. First, was Western "hired to perform" this work for Dixie? *Cain*, 236 S.W.3d at 588. Second, was Black's work for Dixie "a 'customary, usual, or normal' part of Dixie's business or 'work that [Dixie] repeats with some degree of regularity'"?

*Black*, 516 F. App'x at 417 (quotation omitted). Third, was the work by Black "work that Dixie or similar businesses would normally perform or be expected to perform with employees"? *Id.*

Dixie meets each requirement. *First*, Dixie and Georgia-Pacific hired Western to transport and deliver paper rolls to Dixie's Bowling Green factory. The carriage agreement required Western to "transport and deliver shipments of contract freight from facilities or other designated locations to the various destination points." R. 14-2 at 2. And it specified that Western had a duty "to provide transportation services" to "GP and any GP subsidiary," such as Dixie. *Id.*

It matters not that the carriage agreement does not spell out every step of the "transport and deliver[y]" process. *Id.* What matters is what Black acknowledges: He was "[w]orking and helping in the transportation of freight" while unloading the rubber mats. R. 84-9 at 21. Western was hired "to transport safely and deliver undamaged all freight." R. 14-2 at 3. The rubber mats "insur[ed] that each load [was] properly loaded and secured," a requirement of the carriage agreement. *Id.* If Black had not assisted in the unloading process by removing the rubber mats, Chinn would have had to do it himself. Even if "unloading the materials off the trucks was not one of [Black's] job duties," *Black*, 516 F. App'x at 413, Black did not complete his run the instant the truck reached the loading dock. As the Supreme Court of Kentucky explained in a similar setting, a tractor-trailer driver is "a participant in the unloading process" when he releases and rolls straps. *Interlock Indus., Inc. v. Rawlings*, 358 S.W.3d 925, 928 (Ky. 2011). Black's unloading of the rubber mats was part of the transportation and delivery for Dixie, "the task" Western was "hired to perform." *Cain*, 236 S.W.3d at 588.

*Second*, unloading materials at the Bowling Green factory "is a 'customary, usual, or normal' part of Dixie's business or 'work that [Dixie] repeats with some degree of regularity.'" *Black*, 516 F. App'x at 417 (quotation omitted). The relevant work is the "work being performed at the time of the injury." *Estate of Dohoney ex rel. Dohoney v. Int'l Paper Co.*, 560 F. App'x 564, 569 (6th Cir. 2014). The question is whether "deliveries of raw paper materials to Dixie occurred on a regular or recurrent basis." *Black*, 516 F. App'x at 415. The answer is straightforward, as Dixie "received as many as fifty truck shipments of rolled paper raw

materials during a typical week." *Id.* Unless Dixie entered the business of producing raw paper in Bowling Green, it necessarily needed to receive and unload regular deliveries of raw paper.

*Third*, the answer to the key question, the one that needed more evidence on remand, turns on whether the transportation and delivery of raw paper materials amount to "work that Dixie or similar businesses would normally perform or be expected to perform with employees." *Black*, 516 F. App'x at 417. The evidence on remand shows this as well. Jeff Gottke, in charge of the Bowling Green facility, testified that Dixie is "responsible for unloading the product out of the truck." R. 84-5 at 22. Charles W. Clowdis, Jr., an expert witness and logistics specialist, testified that "the work at issue here—the transport of raw paper materials from a supplier to a Dixie Consumer Products plant—is work that a company similar to Dixie might very well handle or be expected to handle with its own private fleet." R. 84-20 at 15–16. And he based this opinion on the knowledge that at least one hundred companies, including paper companies such as Union Camp Fine Papers, have utilized private fleets of trucks for their transportation needs. *Id.* at 15.

"Even though" Dixie "may never perform that particular job with [its] own employees, [it] is still a contractor if the job is one that is usually a regular or recurrent part of [its] trade or occupation." *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky. 1986). As Black knows all too painfully, Dixie has equipment (forklifts and compactors) and employees for unloading trucks and receiving deliveries. Kentucky courts have granted statutory immunity to contractors when truck drivers, operating under "a motor-carrier agreement," are injured loading their trucks at a contractor's facility. *Thornton v. Carmeuse Lime Sales Corp.*, 346 S.W.3d 297, 297–98 (Ky. Ct. App. 2010). And we see no reason to treat unloading differently. Dixie is entitled to statutory immunity from suit and, accordingly, so is Georgia-Pacific.

While this application of Kentucky law helps Dixie and Georgia-Pacific in the near term, it should help other workers in the long term. The premise of our decision is that someone injured in this setting will receive workers' compensation no matter what—no matter whether the contractor (here the trucking company) contributes to the system or not. Because we treat the kind of work Black was doing as part and parcel of what Dixie does, that means a worker injured in this setting will receive compensation regardless of fault by a company in Dixie's shoes or one

in Western's shoes.  And that means Black (or someone like him) will always receive workers' compensation.  All of this also means that the immunity from a further lawsuit applies as well. This burden and this benefit lie at the heart of the trade-off built into any workers' compensation system, as Black's counsel acknowledged at oral argument.   For one cannot "assure that contractors and subcontractors provide workers' compensation coverage" for all workers without also assuring that they receive immunity from suit in return.  *Cain*, 236 S.W.3d at 587.

For these reasons, we reverse.

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting.   The majority would bestow upon this Circuit the dubious distinction of becoming the first circuit in the nation to hold that a denial of an affirmative defense of state workers' compensation immunity is immediately appealable.  In its apparent eagerness to reach the merits, the majority ignores the plain language of the Kentucky Workers' Compensation Act, overlooks a substantial body of case law construing the statute, and fails to heed the stern and frequent cautions of the United States Supreme Court that the "narrow" rule allowing appeals from a small class of non-final orders "should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (citation omitted).  Because Kentucky law does not establish that denials of workers' compensation immunity belong in that limited class, I would dismiss this appeal for lack of jurisdiction.

The circumstances giving rise to this appeal from a denial of immunity at the summary judgment stage are somewhat atypical: Defendants Dixie and Georgia-Pacific are private parties in a diversity action asserting immunity only under state law.  Specifically, Dixie and Georgia-Pacific seek a finding that they are entitled to so-called "exclusive remedy immunity" and "up-the-ladder immunity" under provisions of a Kentucky statute requiring a covered employer to pay workers' compensation benefits to its own employees or the employees of subcontractors for on-the-job injuries without regard to fault; "[i]f an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability." Ky. Rev. Stat. § 342.690(1).  The district court ruled that Dixie and Georgia-Pacific had not made out their affirmative defense of immunity under the Kentucky Workers' Compensation Act (the "Act"), and denied summary judgment.  Dixie and Georgia-Pacific took an immediate appeal seeking reversal of that finding.

Before we address whether Dixie and Georgia-Pacific are entitled to up-the-ladder immunity, we must first address our jurisdiction.  Federal law, including decisions of the

Supreme Court regarding appeals from non-final orders, governs our jurisdiction to hear this appeal in a federal forum, and state law supplies the substance of the immunity we are called upon to analyze. *Range v. Douglas*, 763 F.3d 573, 581 (6th Cir. 2014) (citing *Chesher v. Neyer*, 477 F.3d 784, 793 (6th Cir. 2007)). As the Second Circuit put it, "[s]tate substantive law governs the scope of immunity for state law claims, and federal law determines the appealability of the district court's order." *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 181 (2d Cir. 2008) (quotations and citations omitted). *Accord Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 198–99 (1988). This Circuit distinguishes between state statutes conferring immunity from liability and those conferring immunity from suit; "[a]n order denying statutory immunity is immediately appealable *only if* the state law provides immunity from suit, as opposed to immunity simply from liability." *Chesher*, 477 F.3d at 793 (emphasis added); *see also Range*, 763 F.3d at 581; *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia*, 723 F.3d 640, 645 (6th Cir. 2013).

Determining whether a state statute provides immunity from liability or immunity from suit for purposes of interlocutory appellate jurisdiction naturally entails a review of the relevant statutory provisions and case law. Where we are "required to determine issues that rest upon Kentucky law, we must apply Kentucky law in accordance with the controlling decisions of the Kentucky Supreme Court." *Snow Pallet, Inc. v. Clinton Cty. Indus. Dev. Auth.*, 46 F. App'x 787, 789 (6th Cir. 2002). Unlike the majority, I do not believe the Act or the cases construing it establish that exclusive remedy and up-the-ladder immunity constitute immunity from suit, rather than mere immunity from liability, under Kentucky law.

Insofar as neither party seems to fully grasp the analysis by which we assess interlocutory appellate jurisdiction in the federal courts, some initial review may be in order. "By statute, Courts of Appeals 'have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting 28 U.S.C. § 1291). Ordinarily, a denial of summary judgment is not final for purposes of appellate jurisdiction. *McDonald v. Flake*, 814 F.3d 804, 815 (6th Cir. 2016).

The collateral order doctrine is a limited practical application of this rule allowing appeals from non-final orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Johnson v. Jones*, 515 U.S. 304, 310 (1995) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).**[1]** This statement has been distilled into three requirements: an immediately appealable order must "(1) 'conclusively determine [a] disputed question,' (2) 'resolve an important issue completely separate from the merits of the action,' and (3) 'be effectively unreviewable on appeal from a final judgment.'" *Behrens v. Pelletier*, 516 U.S. 299, 315 (1996) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)) (alteration original). Denials of absolute immunity, qualified immunity, and Eleventh Amendment immunity, as well as rulings adverse to a criminal defendant on a double jeopardy defense, among a very few others, belong in this select class. *Will v. Hallock*, 546 U.S. 345, 350 (2006).

> Recently, the Supreme Court described the conditions for a collateral appeal as follows:
>
> The justification for immediate appeal must therefore be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes. . . . That a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . has never sufficed. Instead, the decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order.

*Mohawk Industries*, 558 U.S. at 106 (quotations and citations omitted). As a court of appeals, we have been admonished to be wary of the arguments in favor of an immediate appeal: "§ 1291 requires courts of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Digital Equip.*, 511 U.S. at 873.

In order to determine whether this this type of immunity constitutes an immunity from liability or an immunity from suit altogether, federal courts must look to the language of the state

---

**[1]**Black appears to believe, incorrectly, that only governmental defendants are entitled to collateral appeals. *Cohen*, which concerned the district court's refusal to post security as required for a shareholder derivative action under New Jersey law, involved private parties. *See* 337 U.S. 541.

statute and the cases construing it. *World Trade Ctr.*, 521 F.3d at 182. Dixie and Georgia-Pacific seek to avoid an adverse judgment in Black's negligence action by invoking the exclusive remedy provision of the Kentucky Workers' Compensation Act, which states that "[i]f an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee." Ky. Rev. Stat. § 342.690(1). That same statutory provision extends the definition of an employer to a "contractor," which is defined as follows in a separate section of the Act:

> (2) A contractor who subcontracts all or any part of a contract . . . shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation . . . Any contractor . . . who shall become liable for such compensation may recover the amount of such compensation paid and necessary expenses from the subcontractor primarily liable therefor. A person who contracts with another:
>
> . . .
>
> (b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person
>
> shall for the purposes of this section be deemed a contractor, and such other person a subcontractor.

Ky. Rev. Stat. § 342.610.

The Kentucky Supreme Court has described the Act as "a product of compromises by workers and employers" whereby "[w]orkers agree to forego common law remedies in exchange for statutory benefits awarded without regard to fault" and "[e]mployers agree to pay such benefits and to forego common law defenses in exchange for immunity from tort liability." *Labor Ready, Inc. v. Johnston*, 289 S.W.3d 200, 204 (Ky. 2009). Likewise, the purpose of so-called "up-the-ladder-immunity" for subcontractors is to

> discourage a contractor from subcontracting work that is a regular or recurrent part of its business to an irresponsible subcontractor in an attempt to avoid the expense of workers' compensation benefits. KRS 342.610(2)(b) accomplishes its purpose by viewing an *up-the-ladder* contractor as being the employer of an

uninsured subcontractor's employees . . . KRS 342.690(1) provides both direct and statutory employers with immunity from tort liability for work-related injuries.

*Doctors' Associates, Inc. v. Uninsured Employers' Fund*, 364 S.W.3d 88, 91 (Ky. 2011) (footnote omitted).  In another case, the Kentucky Supreme Court equated "exclusive remedy immunity" with "immun[ity] from tort liability" in stating the substantive test for up-the-ladder immunity:

> [W]hether an owner is entitled to "exclusive remedy" immunity depends upon whether the worker was injured while performing work that was "of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession" of the owner.  If so, the owner is immune; if not, the owner is subject to tort liability.

*Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 585 (Ky. 2007) (quoting Ky. Rev. Stat. § 342.610(2)(b).

Notably, the relevant statutory provisions speak exclusively in terms of the "*liability* of [an] employer" as being "exclusive" under the Act, or, alternately, in terms of whether the employer is "*liable* for the payment of compensation."  In various semantic formulations, the cases cited above echo the statutory language by referring to this type of state law immunity as being immunity from liability.  The most recent case to have considered Ky. Rev. Stat. § 342.690—which postdates the *Ervin Cable* case discussed below—termed "one of the purposes of the Act" as "extend[ing] benefits to employees without the need to prove fault, while protecting employers from tort liability."  *Falk v. All. Coal, LLC*, 461 S.W.3d 760, 765 (Ky. 2015).  Indeed, describing exclusive remedy immunity and up-the-ladder-immunity as immunity from liability appears to be the dominant trend in Kentucky case law.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010); *Davis v. Hensley*, 256 S.W.3d 16, 17 (Ky. 2008); *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 464 (Ky. 1986) (describing Ky. Rev. Stat. § 342.690(1) as providing an "exemption from liability").  By contrast, when Kentucky courts speak of the immunity enjoyed by government entities, they uniformly describe that immunity as "immunity from suit."  *See, e.g.*, *Comair, Inc. v. Lexington-Fayette Urban Cty. Airport Corp.*, 295 S.W.3d 91, 94 (Ky. 2009); *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 805 (Ky. 2009).

Ignoring these precedents, the majority nonetheless selectively characterizes exclusive remedy immunity and up-the-ladder-immunity under Kentucky workers' compensation law as providing immunity from suit, as opposed to immunity from liability. The majority rests its finding of jurisdiction on the "reality that up-the-ladder immunity insulates contractors from lawsuits, not just liability"—a skewed contention it constructs on the basis of a footnote to a single decision of the Kentucky Supreme Court and a decision of the Kentucky Court of Appeals granting an interlocutory appeal from a denial of up-the-ladder immunity. *See Beaver v. Oakley*, 279 S.W.3d 527, 528 n.1 (Ky. 2009); *Ervin Cable Constr., LLC v. Lay*, 461 S.W.3d 422, 424 (Ky. Ct. App. 2015). It purports to find further support for its holding in a policy argument about the efficiency of foregoing litigation altogether in exchange for workers' compensation benefits, which appears rooted more in its own ideas about how a workers' compensation program should work than in the language of the Kentucky statute or what Kentucky cases actually say the legislation is designed to achieve.

Although the classification of up-the-ladder immunity as "immunity from suit" seems mostly not to have taken hold, the majority is thus quick to seize on a few instances in which Kentucky courts have referred to exclusive remedy liability as "immunity from suit"—a term that occasionally appears to have been used interchangeably with "immunity from liability"— and cites a single mention of "absolute immunity" in a lone case of the Kentucky Court of Appeals, *Ervin Cable*. *Beaver*, for instance, discussed whether a construction manager could be "considered a contractor and qualify for up-the-ladder *immunity from tort liability*," and added an explanatory footnote stating that "[i]n Kentucky, 'up-the-ladder immunity' refers to a contractor's immunity from tort lawsuits where the plaintiff was injured at work and workers' compensation benefits are the plaintiff's exclusive remedy under Kentucky Revised Statutes (KRS) 342.690." *Beaver*, 279 S.W.3d at 528, 528 n.1 (emphasis added).[2]

The majority treats the case of *Ervin Cable* as dispositive authority for the fact that Kentucky "treats" the liability in question as immunity from suit, thus trumping the statute and all other cases discussing up-the-ladder immunity. In *Ervin Cable*, the only Kentucky case to

---

[2]Footnote 1 of *Beaver* was cited by this Court in *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 449–50 (6th Cir. 2012) and by the Kentucky Court of Appeals in *Ervin Cable*, 461 S.W.3d at 424.

have described this type of immunity as "absolute immunity," the Kentucky Court of Appeals found a denial of up-the-ladder immunity subject to direct appeal in the state courts. *See* 461 S.W.3d at 423. That decision cited the footnote in *Beaver* referring to "immunity from tort lawsuits"—although it later described *Beaver* as concerning immunity from liability—to support a description of exclusive remedy liability as "absolute immunity" entitling the defendant corporation to an interlocutory appeal from a denial of summary judgment. *Ervin Cable*, 461 S.W. at 424. Its discussion of appellate jurisdiction was extremely brief, and did not cite any Kentucky case law on workers' compensation immunity, instead relying exclusively on a case involving a defendant performing governmental functions:

> Ordinarily, a trial court's order denying summary judgment is not immediately reviewable on appeal since such an order is considered interlocutory. However, in this case Ervin Cable moved for summary judgment on grounds of absolute immunity, the denial of which is subject to immediate appeal since immunity is designed to free the possessor not only from liability, but also from the costs of defending an action. *Breathitt County Bd. of Educ. v. Prater*, 292 S.W.3d 883 (Ky. 2009). In other words, the denial of a substantial claim of immunity is an exception to the finality rule that interlocutory orders are not immediately appealable. *Id.* As a result, this court has jurisdiction to address Ervin Cable's claim that the trial court improperly denied its motion for summary judgment.

*Id.* at 423.

*Ervin Cable* was decided six years after *Beaver*, and the Kentucky Supreme Court has yet to weigh in on whether Kentucky courts allow interlocutory appeals of denial of up-the-ladder immunity. A sole decision from a state intermediate appellate court allowing an interlocutory appeal under state procedures should not obviate the necessary analysis of the statutory language and case law, which should guide this Court's inquiry. *See World Trade Ctr.*, 521 F.3d at 182 ("[w]e therefore caution against placing too much emphasis on state appellate procedures. . . we need only consider the statutory language, if any, of each defense, and the cases construing the defense"). Because even a cursory review of Kentucky law fails to establish that Kentucky confers upon statutory employers immunity from suit, as opposed to merely immunity from liability, up-the-ladder immunity does not satisfy the requirement of effective unreviewability that is a precondition to our hearing any interlocutory appeal. *See Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 605 (6th Cir. 2005) ("[w]here statutory immunity protects defendants

from liability, as opposed to suit, denial of such immunity is not 'effectively unreviewable on appeal from a final judgment'").

Relying heavily on *Ervin Cable*, Dixie and Georgia-Pacific argue that "[b]ecause this is a diversity jurisdiction lawsuit, the law of the forum state, Kentucky, controls. Significantly, Kentucky law recognizes and permits an immediate appeal of a denial of the same immunities raised by Dixie in this case – an appeal prior to the entry of final judgment." (Defs.' Br. at 46.) This argument obscures the fact that our analysis of our own jurisdiction is concerned solely with principles of federal law—an issue on which a sole decision of the Kentucky Court of Appeals, assessing its jurisdiction under state law, is anything but dispositive. *See Budinich*, 486 U.S. at 198–99.

The majority attempts to bolster its jurisdictional finding by citing a number of cases in which various courts of appeals granted interlocutory appeals to private defendants. However, all such cases entailed much stronger claims to genuine immunity from suit, and much more persuasive justifications for relieving an appellant from the burdens of litigation. Several other circuits have found denials of motions brought pursuant to state anti-SLAPP statutes to be immediately appealable. *See, e.g.*, *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009 (9th Cir. 2013). "SLAPP" stands for "strategic lawsuit against public participation" or "strategic litigation against public participation"; state anti-SLAPP statutes provide defendants named "as a result of the exercise of their constitutional rights to petition the government" with "procedural and substantive defenses meant to prevent meritless suits from imposing significant litigation costs and chilling protected speech." *Godin v. Schencks*, 629 F.3d 79, 81 (1st Cir. 2010). The essential purpose of these statutes is, as the California Supreme Court put it, to vindicate the "right *not* to be dragged through the courts because you exercised your constitutional rights." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 147 (2d Cir. 2013) (quoting *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 193 (2005)). Because stopping retaliatory or chilling litigation in its tracks is clearly both the purpose of and the remedy provided by these statutes, it is only natural that they be regarded as conferring immunity from suit—and accordingly subject to collateral appeal.

*McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007), also relied upon by the majority, is of no greater help. *McMahon* granted an interlocutory appeal to a defendant private military contractor; extending the reasoning of cases establishing governmental immunity from tort suits by soldiers for service related-injuries, the court held that the contractor had "stated a substantial claim to a true immunity from suit" because "the litigation process itself"—including depositions and trial testimony—"could conceivably cause intolerable interference with . . . sensitive military judgments." *Id.* at 1340. This is nothing new, and no more than the precedents of this Court and the Supreme Court require; in an unpublished opinion, we summarized the collateral order doctrine as "permit[ting] interlocutory appeals from denials of substantial claim[s] of absolute immunity in circumstances where the party claiming immunity seeks avoidance of a trial that would imperil a substantial public interest." *Delawder v. Platinum Fin. Servs. Corp.*, 189 F. App'x 369, 370 (6th Cir. 2006) (quotations and citations omitted).

No such strong claim to immunity from suit, nor so compelling a justification from relieving the defendants from the burdens of litigation—in which they have participated for the past eight years—exists in this case. Citing only highly inapposite Supreme Court cases and no Kentucky cases whatsoever, Dixie and Georgia-Pacific assert in their reply brief that "the immunity legal ruling would be effectively unreviewable on appeal from a final judgment . . . and the public interest affected is the defendants' right to be free from trial in exchange for the exclusive remedy of workers' compensation – a government-controlled insurance system to protect injured workers." (Def.'s Reply Br. at 7.) This is just the sort of avoidance-of-trial argument of which we are supposed to be wary, and which has so often been rebuffed over the years. *Will* instructs that "[t]hose seeking immediate appeal . . . naturally argue that any order denying a claim of right to prevail without trial" is effectively unreviewable if not immediately appealed, which is a "generalization . . . too easy to be sound and, if accepted, would leave the final order requirement of § 1291 in tatters." 546 U.S. at 351.

The extreme wariness with which we are to "apply[] 'the blunt, categorical instrument of [a] § 1291 collateral order appeal'" likewise counsels against expanding the class of collaterally appealable orders to include denials of up-the-ladder immunity under Kentucky law. *Mohawk Indus.*, 558 U.S. at 112 (quoting *Digital Equip.*, 511 U.S. at 883). Thus, the majority opinion

suffers as much from errors of methodology as of legal analysis. In rendering an entirely new category of state court orders subject to interlocutory appeal, the majority fails to be governed by the restraint that our jurisprudence requires. The Supreme Court said it best in *Will*: "we have meant what we have said; although the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership." 546 U.S. at 350. I would take the Supreme Court at its word.