**Greg BEAVER (d/b/a Beaver Construction Company),**
**Appellant,**

v.

**Kevin OAKLEY and Crawford Electric, Inc., Appellees.**

**No. 2006–SC–000813–DG.**

Supreme Court of Kentucky.

March 19, 2009.

Bradley D. Harville, Louisville, KY, Counsel for Appellant.

Mark H. Edwards, Megibow & Edwards, Richard Brent Vasseur, Boswell, Sims & Vasseur, PLLC, Paducah, KY, Counsel for Appellees.

Opinion of the Court by Chief Justice MINTON.

We accepted discretionary review to decide whether a construction manager or its project superintendent must have a written contract with the injured worker's direct employer in order to be considered a contractor and qualify for up-the-ladder immunity [1] from tort liability for the worker's work-related injury claim. We hold that a formal written contract between the injured worker's direct employer and the alleged tortfeasor is not essential to establish up-the-ladder immunity from tort claims. This holding reaffirms and conforms to long-standing precedent established in *United Engineers and Constructors, Inc. v. Branham.*[2]

## I.   FACTS.

Kevin Oakley was an employee of Crawford Electric when he was injured while working on Sunrise Hospitality's construction site. Oakley fell from a forklift operated by Greg Beaver, the project superintendent. Crawford Electric had a contract with Sunrise Hospitality to perform electrical work at the construction site. Sunrise Hospitality was responsible for paying Crawford Electric for its work.

Sunrise Hospitality also had a written contract with Whitaker Construction Management, LLC, for Whitaker to act as the construction manager for the project. According to the written contract between Sunrise and Whitaker and testimony from Whitaker's representative, Whitaker recommended some subcontractors to Sunrise Hospitality; but Sunrise Hospitality contracted directly with Crawford Electric on

---

1. In Kentucky, "up-the-ladder immunity" refers to a contractor's immunity from tort lawsuits where the plaintiff was injured at work and workers' compensation benefits are the plaintiff's exclusive remedy under Kentucky Revised Statutes (KRS) 342.690. *See General Elec. Co. v. Cain*, 236 S.W.3d 579, 585 (Ky. 2007) ("If premises owners are 'contractors' as defined in KRS 342.610(2)(b), they are deemed to be the statutory, or 'up-the-ladder,' employers of individuals who are injured while working on their premises and are liable for workers' compensation benefits unless the individuals' immediate employers ... have provided workers' compensation coverage. If deemed to be 'contractors,' the owners, like any other employers, are immune from tort liability [exclusive remedy immunity] with respect to work-related injuries whether or not the immediate employer actually provided workers' compensation coverage.").

2. 550 S.W.2d 540 (Ky.1977).

its own initiative. And Whitaker agreed with Sunrise Hospitality to act on Sunrise Hospitality's behalf to verify that subcontractors on the job—such as Crawford Electric—performed adequately before Whitaker approved payment to the subcontractor by Sunrise Hospitality.

Whitaker's owner, Jeffrey Whitaker, could not oversee the project on a day-to-day basis, so he hired Greg Beaver of Beaver Construction Company to be a project superintendent to supervise the Sunrise Hospitality job site and to make regular progress reports to Whitaker. Beaver testified by deposition that Whitaker had the right to control the details of the project, and it paid Beaver weekly for his work on the job. Whitaker did not withhold taxes on Beaver's paycheck. Whitaker and Beaver did not have this arrangement in writing. And neither Whitaker nor Beaver had a written contract with Crawford Electric.

Following Oakley's injury, he filed a personal injury lawsuit against Beaver in circuit court. Oakley alleged that Beaver's negligence on the jobsite caused Oakley's injuries. Beaver moved for summary judgment, asserting that KRS 342.690(1) gave him up-the-ladder immunity from liability for Oakley's claims.[3] Beaver argued that Whitaker functioned as the general contractor on this construction site and that he was only acting as Whitaker's employee or representative on the job site, resulting in up-the-ladder immunity for Beaver. Oakley countered that Sunrise Hospitality was the general contractor and that Beaver was not entitled to up-the-ladder immunity.

The trial court granted summary judgment in Beaver's favor agreeing with Beaver that he was Whitaker's representative on this jobsite.[4] The trial court concluded that as a representative of the general contractor, Beaver was immune from liability for Oakley's personal injuries.

The Court of Appeals reversed this summary judgment holding that Beaver was not entitled to up-the-ladder immunity. The Court of Appeals stated, "it is apparent that there was no contractor/subcontractor relationship between Whitaker/Beaver and Crawford Electric since neither Whitaker nor Beaver contracted with Crawford Electric." Based on lan-

---

3. KRS 342.690(1) states:

If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation. The liability of an employer to another person who may be liable for or who has paid damages on account of injury or death of an employee of such employer arising out of and in the course of employment and caused by a breach of any duty or obligation owed by such employer to such other shall be limited to the amount of compensation and other benefits for which such employer is liable under this chapter on account of such injury or death, unless such other and the employer by written contract have agreed to share liability in a different manner. The exemption from liability given an employer by this section shall also extend to such employer's carrier and to all employees, officers or directors of such employer or carrier, provided the exemption from liability given an employee, officer or director or an employer or carrier shall not apply in any case where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer or director.

4. The depositions taken show that everyone deposed regarded Whitaker or Beaver as the contractor or general contractor.

guage used in the written contract between Sunrise Hospitality and Whitaker, the Court of Appeals concluded that Whitaker was not a contractor but, rather, "a Construction Manager ... NOT a Constructor." The Court of Appeals further distinguished the case from the holding in *Branham*,[5] on the basis that the defendant seeking immunity in *Branham* was a "constructor," unlike Whitaker, and that "the party who stood to benefit from the 'up the ladder' doctrine contracted with the subcontractor; whereas, neither Whitaker nor Beaver did so in this case."

Because we conclude that the Court of Appeals erred in reversing the trial court, we reverse the holding of the Court of Appeals and reinstate the trial court's summary judgment.

## II. *ANALYSIS.*

▮▮▮▮ Under Kentucky law, unless a worker has expressly opted out of the workers' compensation system, the injured worker's recovery from the employer is limited to workers' compensation benefits. The injured worker is not entitled to tort damages from the employer or its employees for work-related injuries.[6] And, in this context, the term *employer* is construed broadly to cover not only the worker's direct employer but also a contractor[7] utilizing the worker's direct employer as a subcontractor.[8] But if "some other person than the employer" may be legally responsible for the worker's on-the-job injuries, the worker may assert a tort claim against that other person and attempt to recover damages.[9] The issue we must address in this appeal is whether the evidence of record definitely establishes Beaver as a representative of Oakley's statutory employer such that Beaver is entitled to up-the-ladder immunity or whether Beaver may still be "some other person than the employer" who would not enjoy immunity from possible tort liability. Based on our review of the evidence in this case, we conclude that the trial court properly ruled that Beaver was entitled to up-the-ladder immunity.

In *Branham*, we reversed a judgment for a plaintiff upon concluding that the defendant was a contractor entitled to up-

---

5. 550 S.W.2d 540.

6. KRS 342.690(1) provides, in pertinent part, that "[i]f an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee ... on account of such injury or death." It also provides that "[t]he exemption from liability given an employer by this section shall also extend ... to all employees ... of such employer...."

7. KRS 342.690(1) further states that "[f]or purposes of this section, the term 'employer' shall include a 'contractor' covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation."

8. KRS 342.610(2) provides that "[a] person who contracts with another: ... (b) [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor."

9. KRS 342.700(1) states: "[w]henever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, but he shall not collect from both." We note that in this case, Oakley has received workers' compensation benefits from his direct employer (Crawford Electric) and these benefits would have to be recouped if he were to receive tort damages from Beaver.

the-ladder immunity for the subcontractor's employee's injuries despite recognizing that the plaintiff's direct employer might not technically be regarded as a subcontractor of the defendant outside the workers' compensation context.[10] Branham was injured while operating equipment leased by E.B. Lowman to United Engineers and Constructors, Inc., for a construction project on premises owned by the Armco Steel Corporation.[11] Armco had a contract with United for construction and had contracted with Lowman itself to lease equipment and an operating crew that included Branham.[12] Technically, there was no written contract between United and Lowman. But United's superintendent had actually negotiated the lease with Lowman; and the rental agreement was signed by United, acting through that superintendent "as agent for Armco." [13]

As the Court of Appeals recognized and perhaps unduly emphasized, some distinctions exist between the contracts at issue in *Branham* and the case now before us. In *Branham*, the defendant at issue (United) was referred to as a "constructor" in the written contract with the premises owner. By contrast, Whitaker was referred to as a "Construction Manager who is NOT a Constructor" in the written contract with the premises owner, Sunrise Hospitality. Under the terms of the contract with Armco in *Branham*, United took on an active, hands-on role at the construction site,[14] as well as serving as "purchasing agents" responsible for contracting to purchase construction equipment and materials. In the instant case, during the pre-construction phase, Whitaker's role was largely consultative under the written contract: for example, it would recommend whom to hire for certain types of work; although, Sunrise Hospitality actually independently contracted for different aspects of the overall project, such as electrical work for which it hired Crawford Electric. But, in the construction phase, Whitaker also had the responsibilities of management, coordinating the work of various parties involved, and making sure that tasks were completed in accordance with plans and specifications.[15] Whitaker delegated the actual day-to-day supervision of the construction project to Beaver, apparently through an oral agreement.

Distinguishing the holding in *Branham*, the Court of Appeals concluded up-the-

---

10. *Branham*, 550 S.W.2d at 547 ("Whether that arrangement justifies the inflexible label of 'subcontract' as it might be considered apart from the compensation statutes we need not decide. Under those statutes, however, we think that it does.... In the 'up-the-ladder' context we construe the relationship between United [defendant] and Lowman [plaintiff's direct employer] to have been that of contractor and subcontractor.").

11. *Id.* at 541.

12. *Id.* at 542.

13. *Id.* at 542–43.

14. *Id.* at 542. ("As 'Constructors' it agreed, when so ordered and directed by Armco, to execute 'with our own forces the construc-

tion, and install the machinery and equipment, subletting (our emphasis) parts of the work when it is your advantage to do so, and turn the completed section or sections of the work over to you when ready for regular use.' ").

15. The contract referred to those providing different specified services, such as the electrical services provided by Crawford Electric as "Contractors"; however, as explained in latter parts of this opinion, it appears that Whitaker/Beaver essentially functioned as contractors, and Crawford Electric and others providing specific services functioned as subcontractors under prior precedent, such as *Branham*, which focuses on function and substance rather than the exact language used in written contracts in determining who is a "contractor" for purposes of "up-the-ladder" immunity.

ladder immunity was not available to Beaver in this case. It stated that "in *Branham* the party who stood to benefit from the 'up the ladder' doctrine contracted with the subcontractor; whereas, neither Whitaker nor Beaver did so in this case." But judging from the paperwork alone, the party (United) claiming up-the-ladder immunity in *Branham* did not, in fact, have a contract with the subcontractor at issue there (Lowman) because United's superintendent signed the contract with Lowman as the agent for Armco; but United was not a named party to the contract.[16] Nevertheless, despite the lack of a direct written contract between subcontractor and contractor in *Branham,* we recognized that United functioned as the contractor on the construction site as a practical matter and was, thus, entitled to up-the-ladder immunity, stating:

> the Lowman agreement's being put in the name of Armco as principal was strictly a matter of formality, and again merely a facet of the financial arrangement between Armco and United. It was United that decided where, when and what equipment was needed, and it was United's officer who negotiated and actually executed the rental agreement with Lowman.... The cold fact is that United, the party obligated to do the work for which the crane was needed, was the real party in interest, and we do not think the question of whether Lowman was a subcontractor under United

can be made to stand or fall on the basis of the paper work.[17]

Like the instant case, we found in *Branham* that the paperwork obscured the reality of the functional contractor/subcontractor relationship. We noted that "[t]he paper relationship between Armco and United obviously was designed for the purpose of placing upon Armco the burden of financing the project from beginning to end" before finding that "[i]n substance, United was its prime contractor."[18] In fact, Armco (the premises owner) apparently contracted directly with those providing specific services and presumably was also responsible for payment on those contracts,[19] just as Sunrise Hospitality directly contracted with and was responsible for paying subcontractors like Crawford Electric in this case.

■ In the instant case, it also appears that the written contract with Crawford Electric was put in the premises owner's (Sunrise Hospitality's) name as a formality and as "a facet of the financial arrangement between" Whitaker and Sunrise Hospitality, the entity directly responsible for paying subcontractors for their work. And like the facts in *Branham,* it fell to the alleged contractor—Whitaker, acting through Beaver—to superintend or coordinate the worksite. Following the holding in *Branham,* Beaver is entitled to up-the-ladder immunity because our precedent makes clear that we must construe the role of contractor in a practical and functional—not hypertechnical—way.[20] The

---

16. *Id.* at 543.

17. *Id.*

18. *Id.*

19. *Id.* at 542. ("Important to the argument that United was an agent rather than a contractor for Armco is this provision of the proposal: 'You (Armco) will have full control of all purchases and of the letting of all contracts. All contracts and orders placed by us (United) will be in your name, signed by us as Agents for you.' ").

20. *Id.* at 547 ("Whether that arrangement justifies the inflexible label of 'subcontract' as it might be considered apart from the compensation statutes we need not decide. Under those statutes, however, we think that it does. Beyond cavil, part of the package delivered by Lowman to United consisted of the services of two men. United in turn had contracted to perform those services for Armco. In the 'up-the-ladder' context[,] we construe the relationship between United and Lowman to have been that of contractor and subcontractor. United therefore was not 'some other person

deposition testimony in this case demonstrates that Whitaker actually functioned as the contractor and Beaver as Whitaker's representative[21] even though they may not have established the type of written contract with Oakley's direct employer that was customarily expected in a contractor-subcontractor relationship.[22]

We do recognize, in contrast to *Branham*, two distinct ladders of written contracts in the case before us: the construction management contract between Sunrise Hospitality and Whitaker (with Whitaker's separate oral contract with Beaver) versus Sunrise Hospitality's contract with Crawford Electric for electrical services. But both Whitaker and Crawford Electric had contracts with the same party (Sunrise Hospitality) for the same purpose: performing work on the hotel construction site. By the terms of its contract with Sunrise Hospitality, Whitaker had the responsibility of superintending or coordinating the work on the construction site, including overseeing the work of Crawford Electric to determine if

it had performed its job satisfactorily so that it should be paid by Sunrise Hospitality. Much of this responsibility was delegated to Beaver. Given the terms of Whitaker's contract with Sunrise Hospitality (with the appropriate focus on actual function and substance rather than simply on form, as established by *Branham* for purposes of this type of proceeding), we think it fair to say that there was a contract—in a broad sense—between Whitaker and Beaver and Crawford Electric for Whitaker and Beaver to supervise Crawford Electric's work and certify completion of the work before Crawford Electric could be paid by Sunrise Hospitality.[23]

Oakley argues that we would dismiss clear statutory language if we recognize up-the-ladder immunity in favor of an alleged contractor who did not contract with another to perform work because KRS 342.610(2) states that "[a] person who contracts with another: ... (b) [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade,

---

than the employer' under KRS 342.700(1) or its precursor, KRS 342.055.").

**21.** Oakley has suggested that perhaps Beaver might have been an independent contractor rather than Whitaker's employee. But he has pointed to no proof to refute Beaver's and Whitaker's testimony that Whitaker was the boss and Beaver the employee and that, ultimately, Whitaker had the right to control over the project. And the right to control details of the work performed is the key consideration in determining whether one is an employee or independent contractor. *Ratliff v. Redmon*, 396 S.W.2d 320, 327 (Ky.1965). So we are satisfied that the trial court correctly determined that Beaver was Whitaker's employee and entitled to up-the-ladder immunity.

**22.** BLACK'S LAW DICTIONARY (8th ed.2004) defines a *contractor* as "[a] party to a contract" or "more specif. [specifically], one who contracts to do work or provide supplies for another." It further defines a *gen-*

*eral contractor* as "[o]ne who contracts for the completion of an entire project, including purchasing all materials, hiring and paying subcontractors, and coordinating all the work." *Id.*

**23.** BLACK'S LAW DICTIONARY (8th ed.2004) recognizes that a *contract* may not necessarily always mean a legally enforceable agreement in all contexts because it includes the following as one of several alternative definitions of *contract:* "Loosely, an unenforceable agreement between two or more parties to do or not to do a thing or set of things; a compact <when they finally agreed, they had a contract>" In the instant case, it seems that Crawford Electric had agreed to perform electrical work on the construction site; and Whitaker and Beaver agreed to supervise and coordinate the worksite and to advise Sunrise Hospitality when Crawford Electric and others had satisfactorily completed work. In that sense, there was a *contract* whether or not they had a legally enforceable agreement for purposes of a breach of contract suit.

business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor." Although not expressly discussed in *Branham,* the statutes at issue (KRS 342.610 and KRS 342.690) were substantially the same at the time of the *Branham* opinion thirty years ago in that a *contractor* was described as one who contracts with another to perform work of a regular and recurrent nature;[24] and exclusive remedy immunity was also extended to a contractor.[25] *Branham* shows that this statutory language of contracts does not demand evidence of formal written contracts[26] between a defendant and the plaintiff's direct employer for the defendant to have up-the-ladder immunity but, rather, shows that contracts might be found in this context when the facts show that the defendant is effectively functioning as the contractor. Although the reasoning in *Branham* does not explicitly address the statutory language of contracts, the reasoning of the case seems to imply that United and Lowman contracted with each other at least in a broad sense for the purposes of determining whether up-the-ladder immunity is available, even if the evidence would not establish a binding contract for purposes of a breach of contract action, for instance.[27]

In the past, we have used alternate language in case law such as one who *engages* another to perform work.[28] Beaver argues that the word *engages* suggests "a much

---

**24.** In 1977, the then-existing version of KRS 342.610(2) provided, in pertinent part, that: "[a] person who *contracts* with another ... (b) to have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation or profession of such person, shall for the purposes of this section be deemed a contractor, and such other person a subcontractor." (emphasis added).

**25.** In 1977, the then-existing version of KRS 342.690(1) (exclusiveness of liability) provided, in pertinent part, that "[f]or purposes of this section, the term 'employer' shall include a 'contractor' covered by KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation."

**26.** Of course, Kentucky has long recognized that some contracts are validly made orally rather than in writing. The fact that, in some cases, an oral contract may not be legally enforceable under certain circumstances under the Statute of Frauds does not mean that a contract cannot be made orally. *See, e.g., Bennett v. Horton,* 592 S.W.2d 460, 463 (Ky. 1979) ("The statute of frauds does not lend itself to the issue of whether there is or is not a contract in existence. Its design and purpose is to prevent the enforcement of a contract unless, by reason of some exception, the statute of frauds would be found not applicable"); *Motorists Mut. Ins. Co. v. Glass,* 996 S.W.2d 437, 445 (Ky.1997) ("It has long been the law of this Commonwealth that the fact that a compromise agreement is verbal and not yet reduced to writing does not make it any less binding.").

**27.** Although we express no opinion on the technicalities of whether contracts (in the sense of legally enforceable agreements) between United and Lowman in *Branham* or Whitaker/Beaver and Crawford Electric in this case might be established by implication, we note that contracts may be implied from facts and circumstances as well expressly made. *See Dorton v. Ashland Oil & Refining Co.,* 303 Ky. 279, 281, 197 S.W.2d 274, 275 (1946) ("An express contract is one wherein all the terms and conditions between the parties are set forth, while in an implied contract some one or more of the terms or conditions are implied from the conduct of the parties. The former speaks for itself, while a contract implied in fact is one inferred from the circumstances or acts of the parties.").

**28.** *Fireman's Fund Ins. Co. v. Sherman & Fletcher,* 705 S.W.2d 459, 462 (Ky.1986) (construing KRS 342.610's definition of a *contractor* as one "who contracts with another to do work of a kind which is a recurrent part of the work of the trade" to signify that "a person who *engages* another" to perform such work is a contractor—however, the main question at issue there was whether the work performed was regular and recurrent, seemingly not whether the "contractor" (a developer) had a "contract" with the plaintiff's direct employer (a carpentry company)) (emphasis added).

broader interpretation of who may be a 'contractor' instead of focusing strictly upon whether any actual paperwork exists to make this determination (as the Court of Appeals has done in this case)." While we certainly do not ignore the statutory requirement of "contracts," we construe this term broadly in this context to ensure that workers' compensation coverage is provided [29] allowing injured workers to recover benefits quickly without having to show fault.

Given our precedent in *Branham* and the proof presented to the trial court showing that Whitaker functioned as the contractor and Beaver his representative,

no genuine issue of material fact remained; and the trial court properly granted Beaver summary judgment,[30] based on up-the-ladder immunity. Thus, the Court of Appeals erred in reversing its judgment.

### III. *CONCLUSION.*

For the foregoing reasons, we reverse the Court of Appeals and reinstate the summary judgment granted by the trial court.

All sitting. All concur.

---

**29.** *Matthews v. G & B Trucking, Inc.*, 987 S.W.2d 328, 330 (Ky.App.1998) ("To have protection of the Workers' Compensation Act, KRS 342.690 requires an employer to secure payment of compensation as a condition of benefiting from the exclusive liability provision. KRS 342.610 and KRS 342.690(1) ensure that an injured employee will be able to collect benefits, even if the worker's immediate employer has failed to obtain coverage.") (citation omitted).

**30.** Kentucky Rules of Civil Procedure (CR) 56.03 ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky.1991) ("a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial.").