James THORNTON, Appellant,

v.

CARMEUSE LIME SALES CORPORA-
TION; Carmeuse Lime and Stone,
Inc.; and Bulk Transit Corporation,
Appellees.

No. 2009–CA–000090–MR.

Court of Appeals of Kentucky.

Aug. 20, 2010.

Discretionary Review Denied by
Supreme Court April 13, 2011.

David E. Davidson, Covington, KY, for
appellant.

R. David Clark, John L. Tackett, Lex-
ington, KY, for appellees Carmeuse Lime
Sales Corporation and Carmeuse Lime and
Stone, Inc.

Charles H. Cassis, Aaron J. Silletto,
Jennifer Kaelin Luhrs, Louisville, KY, for
appellee Bulk Transit Corporation.

Before TAYLOR, Chief Judge;
ACREE, Judge; BUCKINGHAM,[1] Senior
Judge.

*OPINION*

ACREE, Judge:

The Appellant, James Thornton, asks
this court to reverse the Pendleton Circuit
Court's order granting summary judgment
in favor of the appellee, Carmeuse Lime
Sales, Inc.[2] Because Carmeuse falls with-
in the statutory definition of a contractor
under KRS 342.610(2), its liability is limit-
ed pursuant to KRS 342.690. Therefore,
we affirm the circuit court's order.

Thornton was employed by a trucking
company, Bulk Transit Corporation (Bulk
Transit). Bulk Transit entered into a mo-
tor-carrier agreement with Carmeuse
whereby Bulk Transit would transport
lime from Carmeuse's facility to Car-
meuse's customers. Thornton, under the

1. Senior Judge David C. Buckingham sitting
as Special Judge by assignment of the Chief
Justice pursuant to Section 110(5)(b) of the
Kentucky Constitution and Kentucky Revised
Statute (KRS) 21.580.

2. Appellees include Carmeuse Lime Sales
Corporation and Carmeuse Lime and Stone,
Inc. and will hereinafter be referred to collec-
tively as Carmeuse.

direction of his supervisor at Bulk Transit, made approximately nine to ten trips to and from the Carmeuse facility each week.

On October 27, 2007, Thornton suffered injuries while attempting to load his truck at the Carmeuse facility. He pursued and received workers' compensation benefits from Bulk Transit's workers' compensation carrier.

Thornton also brought suit against Carmeuse for negligence based on the same operative facts that supported his workers' compensation claim. Carmeuse answered and subsequently filed a third-party complaint against Bulk Transit which Bulk Transit answered. Carmeuse then filed a motion for summary judgment arguing that, in accordance with the terms of the motor-carrier agreement and pursuant to KRS 342.610, Carmeuse is a contractor, Bulk Transit is a subcontractor and Thornton is an employee for purposes of the statute; consequently, Carmeuse is entitled to the "exclusive remedy" defense provision of KRS 342.690. The Pendleton Circuit Court granted summary judgment on that basis and in doing so also dismissed Carmeuse's third-party complaint against Bulk Transit.

On appeal, Thornton argues that Carmeuse was not entitled to summary judgment because it does not fit within the statutory definition of a "contractor." Therefore, Carmeuse is not entitled to "up-the-ladder immunity." Further, Thornton argues that even if Carmeuse fits within the definition, it is not entitled to protection because Carmeuse's status as a contractor was altered by the motor-carrier agreement. Carmeuse maintains that it is a "contractor" as defined in KRS 342.610(2).

In addition to the arguments proffered by Thornton and Carmeuse, Bulk Transit submits that even if this Court reverses the decision of the circuit court as to Car-meuse, we should affirm the dismissal of the third-party complaint.

The circuit court's decision to grant summary judgment is reviewed *de novo*. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App.1996).

KRS 342.690 states:

If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death. For purposes of this section, *the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.* The liability of an employer to another person who may be liable for or who has paid damages on account of injury or death of an employee of such employer arising out of and in the course of employment and caused by a breach of any duty or obligation owed by such employer to such other shall be limited to the amount of compensation and other benefits for which such employer is liable under this chapter on account of such injury or death, unless such other and the employer by written contract have agreed to share liability in a different manner.

KRS 342.690 (emphasis added). Therefore, the central issue here is whether Carmeuse is a "contractor" as defined in KRS 342.610(2). That statute says,

A person who contracts with another.... To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occu-

pation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor.

KRS 342.610(2)(b).

In *Tom Ballard Co. v. Blevins*, 614 S.W.2d 247 (Ky.App.1980), this Court found that a coal mine operator that hired a transportation company to deliver coal to its customers was a "contractor" under KRS 342.610(2). *Id.* at 249. The Court reasoned that the mine sold coal at a price that included delivery and it was the mine's responsibility to ensure that the shipment was received. *Id.* The court noted that under KRS 342.610(2) certain persons who would not otherwise be contractors are deemed such for purposes of the act. *Id.*

The Supreme Court discussed the *Blevins* holding and affirmed its reasoning in *General Electric Co. v. Cain*, 236 S.W.3d 579 (Ky.2007). On the basis of a contract between the parties, the Court determined the delivery work performed by the transportation company was a part of the mining company's business. *Id.* at 586. Specifically, delivering coal to its customer was a "regular or recurrent part of the business of the mining company under its contracts to both mine and deliver." *Id.*

Likewise, the delivery of lime to Carmeuse's customers was a regular and recurrent part of its business to mine and deliver lime to its customers. In accordance with the motor-carrier agreement, Carmeuse contacts Bulk Transit and states how many loads need to be picked up each

day from the Carmeuse facility and delivered to Carmeuse customers. Bulk Transit then picks up the load and delivers it in accordance with the delivery deadlines provided by Carmeuse. Carmeuse customers pay Carmeuse for the product and the delivery. In turn, Carmeuse pays Bulk Transit per load—receiving payment for approximately forty loads per day.

The relationship between Carmeuse and Bulk Transit is nearly identical to that discussed *Blevins*. Accordingly, this relationship also amounts to a contractor-subcontractor relationship as defined by KRS 342.610(2).

Thornton argues that even if Carmeuse Lime is a contractor under the statute, the motor-carrier agreement changes that relationship. In support of this argument he relies on an unpublished decision of the United States Court of Appeals for the Sixth Circuit, *Morlan v. Green River Steel Corp.*, 35 F.3d 566 (Table), 1994 WL 502655 (6th Cir.(Ky.), Sept. 14, 1994).[3] In *Morlan*, after determining that Green River Steel was not a statutory contractor, the Sixth Circuit considered whether it was a "statutory employer." 1994 WL 502655 *5–6. In making this determination the Sixth Circuit relied on a decision of the Kentucky Supreme Court, *M.J. Daly Co. v. Varney*, 695 S.W.2d 400 (Ky.1985). Thornton's reliance on the reasoning of these cases is flawed.

In *United States Fidelity & Guaranty Co. v. Technical Minerals, Inc.*, 934

**3.** In accordance with Federal Rule of Appellate Procedure (FRAP) 32.1, "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as "unpublished" ... and (ii) issued ... after January 1, 1997." While Kentucky courts are not bound by FRAP 32.1 or federal cases interpreting Kentucky law, the federal judiciary has determined that all of its opinions rendered after January 1, 1997, have equally persuasive import without regard to their designation as unpublished. We should take no less a view of post–1996 unpublished federal opinions than we do of published federal opinions. However, *Morlan* was designated as "unpublished" and rendered prior to January 1, 1997. Consequently, its persuasiveness is more suspect than other federal case law.

S.W.2d 266 (Ky.1996), our Supreme Court said *M.J. Daly Co. v. Varney* was wrongly decided. The error was that *"M.J. Daly Co. v. Varney* ... interprets the language ... of a repealed statute." *U.S. Fidelity,* 934 S.W.2d at 269. Based on this error, the Court in *M.J. Daly Co. v. Varney* in cursory fashion determined that a contractor-subcontractor relationship did not exist. *M.J. Daly Co. v. Varney* at 401 ("[T]here is no contractor/subcontractor question here."). In *U.S. Fidelity,* the Supreme Court admitted and corrected its error stating, "To conclude that the M.J. Daly Company was not a contractor is erroneous[.]" *U.S. Fidelity,* 934 S.W.2d at 268. If the correct determination of contractor status had been made in *M.J. Daly Co. v. Varney,* examination in that case of the parties' contract in order to determine whether M.J. Daly was an employer would have been unnecessary. Because the correct determination in this case is that Carmeuse is a contractor, there is no need to engage in an examination of the motorcarrier agreement.

Therefore, because Carmeuse is a "contractor" under KRS 342.610(2), it is entitled to "exclusive remedy" immunity under KRS 342.690 and the decision of the circuit court is affirmed.

ALL CONCUR.