RENDERED: MARCH 22, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1534-MR

TOM JOLLY                                                          APPELLANT

v.
                 APPEAL FROM SCOTT CIRCUIT COURT
                 HONORABLE KATHRYN GABHART, JUDGE
                 ACTION NO. 18-CI-00772

MINOVA USA, INC.                                            APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES.

ECKERLE, JUDGE: Appellant, Tom Jolly ("Jolly"), appeals from a summary judgment of the Scott Circuit Court dismissing his negligence claims against Appellee, Minova USA, Inc. ("Minova"). Jolly argues that the Trial Court erred in finding that Minova is entitled to workers' compensation immunity as an up-the-ladder contractor. We agree, concluding that Minova was not a contractor within

the meaning of the Workers' Compensation Act. Hence, we reverse the summary judgment and remand for additional proceedings on the merits of Jolly's claims.

The relevant facts of this matter are not in dispute. Jolly was an employee of Trimac Transportation, Inc. ("Trimac"). Minova contracted with Trimac to pick up truckloads of ground calcium carbonate/limestone filler from Lhoist North America in Tennessee and deliver those loads to its manufacturing plant in Georgetown, Kentucky. On February 26, 2018, while in the course of this employment, Jolly delivered a truckload of raw limestone to Minova. While preparing to unload the truck, an unsecured 700-pound metal cart rolled down a ramp and struck Jolly, who suffered injuries as a result. The cart had been under the control of Pierre M. Vinzu Nseke ("Nseke"), an employee of Management Registry, Inc., d/b/a Malone Staffing Solutions ("Malone").

Jolly filed a workers' compensation claim against Trimac. He separately filed this action against Minova, Malone, and Nseke.[1] After extensive discovery, Minova, Malone, and Nseke each filed motions for summary judgment, arguing that the Workers' Compensation Act provided the exclusive remedy to Jolly, and that they were entitled to immunity as up-the-ladder contractors. On

---

[1] Jolly's health-insurance carrier, Blue Cross/Blue Shield of Tennessee, filed an intervening complaint to seek reimbursement of medical expenses that it had paid.

July 12, 2022, the Trial Court granted Minova's motion. And in a separate order entered on July 15, 2022, the Trial Court granted the motion by Malone and Nseke.

Thereafter, Jolly filed a motion to alter, amend, or vacate the summary judgments. CR[2] 59.05. In an order entered on November 30, 2022, the Trial Court denied the motion as to Minova, concluding that it qualified as an up-the-ladder contractor. However, the Trial Court granted the motion as to Malone and Nseke, noting that they failed to plead workers' compensation immunity as a defense. Accordingly, the Trial Court reinstated Jolly's claims against those defendants. This appeal followed.[3] Additional facts will be set forth below as necessary.

The sole question on appeal is whether Minova qualifies as an "up-the-ladder" contractor and thus is entitled to immunity from tort liability under the provisions of the Workers' Compensation Act. KRS[4] 342.690(1) provides, in pertinent part, as follows:

> If an employer secures payment of compensation as
> required by this chapter, the liability of such employer

---

[2] Kentucky Rules of Civil Procedure.

[3] The Trial Court's November 30, 2022, Order reinstated the claims against Malone and Nseke, rendering the judgment interlocutory as to those parties. That Order did not include the finality language required by CR 54.02. But given the unique procedural posture of this case, we conclude that finality language was not required. The Trial Court's November 30, 2022, Order did not alter the dismissal with respect to Minova. Because the July 12, 2022, Order included the necessary finality language, the later Order merely rendered the earlier Order final. Therefore, this appeal is not interlocutory despite the lack of finality language in the November 30, 2022, Order. We also note that Blue Cross/Blue Shield is not a party to this appeal, although it remains a party in the action below. The parties did not address the issue of the finality language.

[4] Kentucky Revised Statutes.

under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . .  For purposes of this section, *the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610*, whether or not the subcontractor has in fact, secured the payment of compensation.

(Emphasis added.)

KRS 342.610 identifies those employers who are liable for payment of workers' compensation benefits to employees who suffer work-related injuries or occupational diseases.  Specifically, subsection (2) provides,

A contractor who subcontracts all or any part of a contract and his or her carrier shall be liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation as provided for in this chapter. Any contractor or his or her carrier who shall become liable for such compensation may recover the amount of such compensation paid and necessary expenses from the subcontractor primarily liable therefor.  A person who contracts with another:

. . . .

(b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor.

KRS 342.610(2).

The purpose of KRS 342.610(2) is to discourage owners and contractors from hiring fiscally irresponsible subcontractors and thereby

eliminating workers' compensation liability. It accomplishes this purpose by imposing liability upon the "up-the-ladder" contractor for workers' compensation payments to the employees of a subcontractor unless the subcontractor has provided for the payment. *Matthews v. G & B Trucking, Inc.*, 987 S.W.2d 328, 330 (Ky. App. 1998). But an "up-the-ladder" contractor is entitled to immunity from tort liability where its subcontractor has secured workers' compensation coverage. *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 584-85 (Ky. 2007). However, if "some other person than the employer" may be legally responsible for the worker's on-the-job injuries, the worker may assert a tort claim against that other person and attempt to recover damages. *Beaver v. Oakley*, 279 S.W.3d 527, 530 (Ky. 2009) (citing KRS 342.700).

In *General Electric Company v. Cain*, *supra*, the Kentucky Supreme Court addressed the standards under which a premises owner may be found to be an up-the-ladder contractor. That Court first noted that a party that asserts exclusive-remedy immunity must both plead and prove the affirmative defense. 236 S.W.3d at 585. Jolly first argues that Minova failed to plead immunity specifically as an up-the-ladder contractor and therefore waived the defense.

We disagree. CR 8.03 requires that affirmative defenses must ordinarily be set forth in a pleading and must be stated so as to give fair notice of the defense asserted. *See also Vogler v. Salem Primitive Baptist*, 415 S.W.2d 72

(Ky. 1967). As the Trial Court noted, Minova's answer pleaded that Jolly's "action is barred, in whole or in part, by the exclusive-remedy provisions of the Kentucky Workers' Compensation Act, including the provisions of KRS 342.690 and KRS 342.610." Up-the-ladder immunity falls within the exclusive-remedy provisions of the Workers' Compensation Act. Moreover, Minova identified the statutory provisions giving rise to up-the-ladder immunity. Even though Minova did not use the exact term, we conclude that Minova's answer was sufficient to place Jolly on fair notice of its intention to assert the affirmative defense.

In *Cain*, *supra*, the Supreme Court emphasized that, when the underlying facts are undisputed, a conclusion that a defendant is entitled to judgment as a matter of law must be supported with substantial evidence that a defendant was the injured worker's statutory employer under a correct interpretation of KRS 342.610(2)(b). 236 S.W.3d at 585 (citing *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986)). The determination of immunity is a mixed question of fact and law for courts to decide. *Id.* at 589. On the factual issue, summary judgment is not appropriate unless no genuine issues of material fact are raised. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). The record must be viewed in a light most favorable to the party opposing the motion for summary judgment, and all doubts are to be resolved in his favor. *Id.* The conclusions to be drawn from those findings are questions of

law for the Trial Court to decide, subject to *de novo* review by this Court. *Cain*,

236 S.W.3d at 589.

The Supreme Court in *Cain* went on to discuss the circumstances

under which the work being performed is a "regular and recurrent" part of the

premises owner's business. That Court noted that "recurrent" means occurring

again or repeatedly, and "regular" generally means customary or normal, or

happening at fixed intervals. *Id.* at 586 (citing *Daniels v. Louisville Gas & Elec.

Co.*, 933 S.W.2d 821 (Ky. App. 1996)). That Court further noted that neither term

requires regularity or recurrence with the preciseness of a clock or calendar. *Id.* at

587. Rather, the term "regular" applies not only to the nature of the owner's

business, but also to the frequency of the occurrence of a need to perform the work

in question. *Id.*

The Supreme Court also found guidance for determining the work of a

business in Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation

Law*, § 70.06[3] (2006), which states:

> [T]he test must be relative, not absolute, since a job of
> construction or repair that would be a nonrecurring and
> extraordinary undertaking for a small business might well
> for a large plant be routine activity which it normally
> expects to cope with through its own employed staff.
> Ordinarily construction work, such as building a factory
> structure, installing a conveyor system, moving
> laboratory equipment, putting in new partitions, making
> electrical installations, road widening, excavating,
> replacing a heating system, inspecting elevators,

changing the pipes, putting in a septic tank, bricking up
the windows, replacing the floor, building a fence,
building a canopy for a small grocery store, or replacing
shoe racks, would be considered outside the trade or
business of a manufacturing or mercantile establishment.
But if the defendant is a business which by its size and
nature is accustomed to carrying on a more or less
ongoing program of construction, replacement, and
maintenance, perhaps even having a "construction
division," or which can be shown to have handled its own
construction in the past, a job of construction delegated
to a contractor will be brought within the statute.
(footnotes omitted.)

*Cain*, 236 S.W.3d at 587-88.

The Supreme Court in *Cain* concluded that work of a kind that is a "regular or recurrent part of the work of the trade, business, occupation, or profession" of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. Rather, it is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees. *Id.* at 588.

The Trial Court relied on *Beaver v. Oakley*, *supra*, which followed *Cain*. In *Beaver*, Oakley was an employee of Crawford Electric when he was

injured while working on Sunrise Hospitality's construction site. Oakley fell from a forklift operated by Greg Beaver, the project superintendent. Crawford Electric had a contract with Sunrise Hospitality to perform electrical work at the construction site. Sunrise Hospitality was responsible for paying Crawford Electric for its work. Sunrise Hospitality Whitaker Construction Management ("Whitaker"), who employed Beaver. But neither Whitaker nor Beaver had a written contract with Crawford Electric. *Beaver*, 279 S.W.3d at 528-29.

Oakley filed a personal injury action against Beaver, who moved for summary judgment, arguing that he was entitled to up-the-ladder immunity because Whitaker functioned as the general contractor on this construction site, and that he was only acting as Whitaker's employee or representative on the job site, resulting in up-the-ladder immunity for Beaver. Oakley countered that Sunrise Hospitality was the general contractor and that Beaver was not entitled to up-the-ladder immunity.

The trial court granted summary judgment in Beaver's favor agreeing that he was Whitaker's representative on this jobsite. The trial court concluded that Beaver, as a representative of the general contractor, was immune from liability for Oakley's personal injuries. This Court reversed, holding that up-the-ladder immunity was not available where there was no contractor/subcontractor

relationship between Whitaker/Beaver and Crawford Electric because neither Whitaker nor Beaver contracted with Crawford Electric. *Id.* at 529

On further review, the Kentucky Supreme Court reversed this Court and reinstated the summary judgment. The Supreme Court focused on the language of KRS 342.610(2), which states that "[a] person who contracts with another: . . . (b) [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor." *Beaver*, 279 S.W.3d at 533-34. The Supreme Court noted that this language had been previously interpreted as including "one who engages another to perform work" of a regular and recurrent nature. *Id.* at 534 (citing *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky. 1986)). Since the word "engages" is broader than the term "contracts," the Supreme Court held that a formal contractor-subcontractor relationship is not necessary to establish up-the-ladder immunity in the workers' compensation context. *Id.* The Supreme Court emphasized that the appropriate focus should be on the actual function and substance of the work performed, rather than simply on the form of an express contract. *Id.* at 533.

Consequently, the Supreme Court held that, even if the evidence would not establish a binding contract for purposes of a breach-of-contract action,

a contract may nonetheless be found if the facts show that the defendant is effectively functioning as the contractor. *Id.* Given the relationship among the various parties, the Supreme Court held that "there was a contract – in a broad sense – between Whitaker and Beaver and Crawford Electric for Whitaker and Beaver to supervise Crawford Electric's work and certify completion of the work before Crawford Electric could be paid by Sunrise Hospitality. *Id.* at 533. Thus, the Supreme Court concluded that Whittaker and Beaver were entitled to immunity as up-the-ladder contractors to Sunrise Hospitality.

In the current case, the Trial Court applied this discussion by looking at the relationship between Minova's business and the work performed by Jolly. The Trial Court reasoned that, since Minova could not produce certain products without the delivery of the limestone filler that Jolly's employer was providing, his work was a regular and recurrent part of Minova's manufacturing process. The Trial Court further cited *Tom Ballard Company v. Blevins*, 614 S.W.2d 247 (Ky. App. 1980), for the proposition that an employee of a delivery company is part of the process of delivering the materials constructed by the manufacturer to market imbues the manufacturer with the up-the-ladder status of the employee's statutory employer, the transportation company.

The claims in *Blevins* involved an employee of a company that contracted to haul coal for a mining company. *Id.* at 248. A similar situation and

-11-

result arose in *Thornton v. Carmeuse Lime Sales Corporation*, 346 S.W.3d 297 (Ky. App. 2010), which involved a company that contracted to transport lime from the supplier to the customer. In both cases, this Court held that the companies that contracted with the trucking company were up-the-ladder contractors, entitled to immunity, because the delivery of the raw materials was a regular and recurrent part of their business. *Blevins*, 614 S.W.2d at 249; *Thornton*, 346 S.W.3d at 299.

In this case, however, Minova contracted with Trimac to pick up and deliver the raw limestone to its own manufacturing plant. As a result, the factual and legal matters in *Blevins* and *Thornton* are not directly on point with the current case. Moreover, as interpreted in *Beaver*, KRS 342.610(2) places the focus of an immunity analysis on whether the nature of the work performed *by the employee* is of a kind that is a regular or recurrent part of the work of the trade, business, occupation, or profession. *Beaver*, 279 S.W.3d at 534. Similarly, the Supreme Court in *Cain* further emphasized that "regular and recurrent" work does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. *Cain*, 236 S.W.3d at 588.

Minova bore the burden of proving its entitlement to up-the-ladder immunity, including making a showing that the work performed by Jolly was a regular and recurrent part of its business. *Id.* at 585. Minova clearly established

-12-

the existence of a contract between it and Trimac to pick up and deliver raw materials. Furthermore, Minova has shown that Trimac's hauling and delivery of raw materials occurred at regular and recurrent intervals.

However, Minova was also required to prove that the hauling and transportation of raw materials is the type of work that it (or a similarly-situated business) would normally be expected to perform with its own employees. We recognize that a company that engages another to perform a part of the work that is a regular and recurrent part of its business is considered a "contractor" under the Workers' Compensation Act even if it *never* performed that type of work with its own employees. *Cabrera v. JBS USA, LLC*, 568 S.W.3d 865, 869-70 (Ky. App. 2019) (citing *Fireman's Fund*, 705 S.W.2d at 462). But as Jolly notes, Minova was not licensed to transport bulk commodities such as raw limestone, and Minova would have been federally required to maintain such a license if this activity were part of its regular or recurrent work performed with its own or another's employees. While theoretically, Minova could have obtained its own license and hired its own fleet of drivers with commercial drivers' licenses, no evidence was presented that it or any similarly-situated business did or would have done so. Likewise, Minova does not allege that Jolly had any other duties on Minova's worksite that it would normally perform with its own employees. Finally, the delivery of raw materials for manufacturing by the end user, while clearly a

necessary function, is not of the same type of work addressed in any of the previous cases, and there is no binding authority on this particular issue.

Consequently, Minova failed to prove all of the elements necessary to succeed at the dispositive motion stage in the Trial Court. Therefore, we conclude that Minova was not entitled to workers' compensation immunity as an up-the-ladder contractor within the meaning of KRS 342.610(2)(b). As a result, Minova was not entitled to summary judgment on Jolly's claims.

Accordingly, the summary judgment of the Scott Circuit Court is reversed, and this matter is remanded for additional proceedings on the merits of Jolly's claims.

ALL CONCUR.

BRIEFS FOR APPELLANT:

James J. Varellas
Sandra M. Varellas
D. Todd Varellas
Lexington, Kentucky

BRIEF FOR APPELLEE:

Robert E. Stopher
Robert D. Bobrow
Louisville, Kentucky