RENDERED: JUNE 6, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0332-MR

RICKEY R. NORMAN                                                      APPELLANT

v.
APPEAL FROM BULLITT CIRCUIT COURT
HONORABLE RODNEY D. BURRESS, JUDGE
ACTION NO. 23-CI-00008

JIM BEAM BRANDS CO., D/B/A
JAMES B. BEAM DISTILLING CO.                          APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ECKERLE, L. JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Rickey R. Norman appeals from an Order of the Bullitt

Circuit Court entered February 19, 2024, granting Jim Beam Brands Co., d/b/a

James B. Beam Distilling Co. (Beam) a summary judgment and dismissing his

premises liability action. On appeal, Norman argues the trial court erred in finding

his services were a regular or recurrent part of Beam's business so as to make

Beam his statutory "up-the-ladder" employer under the Workers' Compensation Act. For the reasons stated, we reverse and remand.

## BACKGROUND

Norman was employed by Premier AG Co-Op, Inc. (hereafter Premier AG) to deliver diesel fuel and gasoline to its customers. On January 12, 2022, Norman was injured in a fall from a ladder while dispensing fuel oil into large holding tanks on the property of Beam in Clermont, Kentucky.[1] He filed the instant premises liability action against Beam on January 11, 2023. He alleged the basic facts regarding the incident in the complaint as follows:

> 2. On or about January 12, 2022, [Norman] was a business invitee on [Beam]'s property located at 568 Happy Hollow Road, Clermont, Bullitt County, Kentucky, for the purpose of filling fuel tanks. [Beam], through its agents and servants, provided a ladder for [Norman] to use on ground that was muddy and slick and as a result, when [Norman] was on the ladder, it fell causing [Norman] to be injured.

Complaint at 2. According to Norman's interrogatory responses, at the time he filed this suit he had a pending workers' compensation claim for his injuries

---

[1] According to the contractor injury report, Ricky R. Norman was injured while attempting to fill fuel tanks at Bernheim Fire Pumphouse at the Beam distillery. Record at 49.

against his employer, Premier AG. Premier AG's workers' compensation carrier, Sedgwick, had paid most of his medical bills.[2]

Following limited discovery, on July 14, 2023, Beam moved for summary judgment under Kentucky Rules of Civil Procedure (CR) 56 based on immunity from tort liability through an "up-the-ladder defense" provided in the Kentucky Workers' Compensation Act (Act). In Beam's Memorandum in Support of Motion for Summary Judgment, Beam argued that it was a "contractor" under the exclusive remedy provision described in Kentucky Revised Statutes (KRS) 342.690. Beam stated that it contracted for work with Premier AG, and pursuant to that contract Norman was performing services which were a regular and recurrent part of the work of Beam. As a result, it claimed the Act's provisions entitled Beam to up-the-ladder immunity from tort liability given to statutory employers for the work-related injuries of the employees of subcontractors.

The Bullitt Circuit Court granted summary judgment on February 19, 2024, on the basis that the work being performed by Norman was a regular and recurrent part of operating a distillery so that Beam was an "up-the-ladder" employer in this instance. The court found:

> In this matter the primary product produced by
> [Beam] is bourbon. It is also in the tourism business in
> that it receives tourist[s] who regularly tour and visit as

---

[2] Jim Beam Brands Co., d/b/a James B. Beam Distilling Co.'s Workers' Compensation and Employers' Liability Policy was through Safety National Casualty Corporation. Record at 53.

part of Kentucky's Bourbon Trail. While bourbon is the primary product of their business [Beam] maintains that a regular or recurrent part of their business involves the consumption of gasoline. Beam argues that Beam receives regular deliveries of fuel. They maintain the fuel is an intricate part of their business as it is used to fuel trucks on their business which transport materials used in the production of bourbon on its property and for multiple other reasons which include fueling of tour buses, maintenance vehicles, and most importantly shipping trucks which are used to transfer barrels from the distillation facility to its warehouses.

Record at 108. The court concluded Norman's work fell within the Workers' Compensation guidelines and Beam was immune from tort liability for Norman's injuries suffered on Beam's business premises. This appeal followed.

## STANDARD OF REVIEW

The standard of review on appeal when a trial court grants a motion for summary judgment is whether the trial court correctly found that there exists no genuine issue as to any material fact and that the movant was entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 482 (Ky. 1991). The evidence must be viewed in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in its favor. *First Fed. Sav. Bank v. McCubbins*, 217 S.W.3d 201, 203 (Ky. 2006). Because summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court need not

defer to the trial court's decision; but rather reviews the court's ruling *de novo*. *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 234 (Ky. 2013).

## ANALYSIS

The primary issue on appeal looks to whether Beam is immune from tort liability for Norman's injuries by qualifying as an up-the-ladder employer under the Act. KRS 342.610(2)(b). As the party asserting the immunity defense, Beam had the burden to prove that it was a "contractor" under KRS 342.610(2)(b) and that under the statutory scheme Norman was its statutory employee. *General Elec. Co. v. Cain*, 236 S.W.3d 579, 590 (Ky. 2007). We begin by reviewing the statutes which grant immunity to "contractors" as up-the-ladder employers. KRS 342.690(1) provides, in pertinent part:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . on account of such injury or death. For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610, whether or not the subcontractor has in fact, secured the payment of compensation.

KRS 342.610(2)(b) defines who is deemed a contractor for our purposes: "A person who contracts with another . . . [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or

-5-

profession of such person."  The two provisions read together establish the up-the-ladder defense:  "an entity 'up the ladder' from the injured employee and who meets all the qualifications of a 'contractor' under KRS 342.610(2) is entitled to the immunity provided by KRS 342.690."  *Davis v. Ford Motor Co*., 244 F. Supp. 2d 784, 786 (W.D. Ky. 2003) (citing *Goldsmith v. Allied Bldg. Components, Inc*., 833 S.W.2d 378, 381 (Ky. 1992)).

The parties agree that the issue raised per KRS 342.610(2)(b), is whether Norman's delivery and unloading of fuel is a "regular or recurrent part of the work of the trade, business, occupation, or profession" of Beam.  The terms, "regular" and "recurrent," were addressed by the Kentucky Supreme Court in the context of statutory employer immunity in *Cain*, 236 S.W.3d 579, as follows:

> [A]s used in KRS 342.610(2)(b), "regular" means that the type of work performed is a "customary, usual or normal" part of the premises owner's "trade, business, occupation, or profession," including work assumed by contract or required by law.  "Recurrent" means that the work is repeated, though not "with the preciseness of a clock."

*Id.* at 586-87 (quoting *Daniels v Louisville Gas & Elec. Co*., 933 S.W.2d 821, 824 (Ky. App. 1996)).  The Court further described the test to be applied:

> Work of a kind that is a "regular or recurrent part of the work of the trade, business, occupation, or profession" of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become

-6-

more competitive in the market. It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform with employees.

*Cain*, 236 S.W.3d at 588 (citation omitted). The Court stated that the test is not absolute, but relative, and takes into account factors relevant to each business, such as its nature, size, and scope. *Id*. at 589.

The trial court agreed with Beam's contention that it met the contractor standard, holding Beam was in the business of both bourbon production and tourism. The court further held that a regular or recurrent part of Beam's business was gasoline consumption. Record at 108-09. Beam had filed as exhibits to its Motion for Summary Judgment affidavits from its Health and Safety Manager, Tate Preston. In one affidavit, Preston stated:

5. Beam utilizes the fuel delivered to its campus for multiple purposes that are essential to the core business operations of Beam such as: tour buses, service vehicles, and barrel transportation to various Beam warehouses.

6. Without fuel being delivered directly to Beam's campus, to its multiple fuel storage sites, Beam's operations would cease, pending logistical modifications.

Affidavit of Preston, Record at 55-56. Beam additionally argues on appeal that it contracted for not just delivery of fuel but also for offloading into tanks on the Beam business premises.

For his part, Norman denies that he was performing a job that was a regular or recurrent part of the work of the Beam's trade or business. Norman argues that since Beam is in the business of producing and selling bourbon at its distillery, the work of transporting and delivering gasoline and diesel fuel is not customary, usual or normal to its particular business. Norman explains he was not involved in work related to production of bourbon or the tourism trade by his delivery of fuel. Norman also notes that diesel and gas are not components of the products Beam produces and sells. Furthermore, no Beam employees were capable of transporting a hazardous material or were otherwise involved with the work Norman was engaged in.

Norman further argues that *Cain*, 236 S.W.3d 579 requires that courts look to whether the job being performed is one that a business of its type would be expected to perform with its own employees. *Id.* at 588. Beam does not use its own employees to transport and unload fuel at its distillery. Norman emphasizes that fuel transportation is highly regulated, requiring federal and state licenses, that Beam admits it does not have. Norman's Reply Brief at 3.

In response, Beam maintains that Premier AG and Norman's work at the distillery was both regular and recurrent. Beam appended purchase orders for Premier AG services to its Motion for Summary Judgment. Record at 58-77. These purchase orders reflect that over a period of years, Beam contracted with Premier AG and its predecessors for the delivery of diesel and gasoline to its facility.[3] Beam also notes that it required the specific services of Norman to offload the fuel to its tanks. This, however, is not supported in the record, since we find no terms in the purchase orders directing Premier AG or Norman on how the fuels are to be delivered. The sole condition expressed is a delivery date.

We note that the record below can be described as meager at best. There was very little discovery taken and the motion for summary judgment was filed shortly after Beam's answer was filed. Based on our review of the record below and applicable law we must conclude that the trial court erred as a matter of

---

[3] For example, according to a "PO tracking" document, attached by Beam to its Motion for Summary Judgment, deliveries were made from Premier AG Co-Op, Inc. (Premier AG) annually on December 31, 2021, December 31, 2022, and December 31, 2023. Record at 76-77. The same document shows deliveries were made from Premier AG's predecessor A&M Oil Company, Inc., on August 5, 2015; December 14, 2016; August 7, 2019; November 12, 2020, and December 31, 2020. Record at 75. Before the creation of the PO tracking document, additional Beam purchase orders in the record with Newcomb Oil Company displayed deliver-by dates of May 14, 2013; January 30, 2014; May 15, 2014; and January 6, 2015. Record at 58-68. While the purchase orders do not detail when deliveries were actually made, presumably deliveries occurred one or more times per year to meet the terms of the annual contract.

law in holding that Beam was a contractor under the Act entitled to up-the-ladder immunity for Norman's claims.

Under the *Cain* test, we must consider what the statutory employer's particular business is, and not solely whether the work of the injured person was repeated or done with some degree of regularity. *Cain*, 236 S.W.3d at 587-88. The "regular or recurrent" label applies when the prospective statutory contractor delegates or assigns a part of its own work to another, which becomes its subcontractor. An entity that simply makes deliveries to a business premises, involving materials or goods unrelated to the actual production or work product of the business, does not qualify as a subcontractor and thus the premises owner is not a statutory employer under the Act. In other words, in this case, Beam is not entitled to up-the-ladder immunity protection from the tort claims asserted by Norman. None of the underlying facts indicate that fuel delivery was "customary, usual or normal" to Beam's business in the production of bourbon or tourism. Nor was Norman's work the type that Beam employees performed or were expected to perform. If one follows Beam's arguments to their illogical extreme, every person or entity that makes deliveries to Beam's premises in Clermont, for any reason, would be deemed a subcontractor under the Act and Beam would be immune from tort liability. In other words, Beam would have absolute immunity from any premises liability action. That is not the law in Kentucky.

-10-

Beam argues that the fact that the company did not engage in fuel delivery or unloading with its employees is of no relevance if the work of a subcontractor was recurring, which Norman's was. Beam directs us to case law that stands for the proposition that "entities who engage another to perform a part of the work which is a recurrent part of their business, trade, or occupation are considered 'contractors' under the Act even if they *never* perform that type of work with their own employees." *Cabrera v. JBS USA, LLC*, 568 S.W.3d 865, 869-70 (Ky. App. 2019) (relying on *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky. 1986)). In examining this line of cases, some Kentucky courts have recognized that work may be considered regular or recurring even if the contractor's own employees never do the work, if the work to be performed is mandated by law for that particular industry. For example, in *Cabrera*, the injured worker's job was to sanitize surfaces, but it was noted there was no evidence JBS employees ever did that work. *Id*. The Court found that the statutory employee's daily sanitizing was regular or recurrent work of JBS because the sanitation work was mandated by law. *Id*. at 870. In *Daniels v. Louisville Gas and Electric Company*, 933 S.W.2d 821 (Ky. App. 1996), the employee was injured while performing emissions testing on coal-fired generators at Louisville Gas and Electric's power station. The emissions testing occurred only every few years, and was not done by LG&E's own workers, yet it was held a regular part of the

business because it was mandated for that industry by law. *Id*. at 824. Finally, in *Miller v. Kentucky Power Company*, 683 S.W.3d 669, 675 (Ky. App. 2023), the Court determined frequent tree trimming around power lines was required by law, so it concluded that this work was a regular or recurrent part of the work of Kentucky Power's business even if its own employees did not do the work.

These cases are clearly distinguishable from the facts presented in this appeal. The work performed by Norman was not involved in the production of bourbon or tourism. Nor was his work mandated by law for Beam to operate its business. The test set out in *Cain* is controlling. In applying the *Cain* test previously described, Norman's work does not qualify Beam for up-the-ladder immunity. *Cain*, 236 S.W.3d at 588; *see also* Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 70.06 (2006). Norman was a business invitee on Beam's premises who was owed the appropriate duty of care by Beam under applicable law. *See Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 909 (Ky. 2013).

The purpose of the up-the-ladder defense is "to discourage a contractor from subcontracting work that is a regular or recurrent part of its business to an irresponsible subcontractor in an attempt to avoid the expense of workers' compensation benefits." *Cain*, 236 S.W.3d at 585. The term employer has been construed broadly to cover contractors utilizing the worker's direct

-12-

employer as a subcontractor. *Beaver v. Oakley*, 279 S.W.3d 527, 530 (Ky. 2009). The purpose "is not to shield owners or contractors from potential tort liability but to assure that contractors and subcontractors provide workers' compensation coverage." *Cain*, 236 S.W.3d at 587. The applicable public policy to ensure that workers are covered under the Workers' Compensation Law is in no way frustrated by this decision. The public policy is for the protection of the worker, not for shielding an up-the-ladder statutory employer like Beam as asserted in this appeal.

Based on the foregoing reasons, the Order of the Bullitt Circuit Court is reversed and the case is remanded for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Ray H. Stoess, Jr.
Louisville, Kentucky

BRIEF FOR APPELLEE:

James M. Burd
Cyrus G. Dutton IV
Louisville, Kentucky